## UNITED STATES v. HUMBLE OIL & REFINING CO.

### No. 7057.

Circuit Court of Appeals, Fifth Circuit.

Feb. 14, 1934.

Erwin N. Griswold, Sp. Asst. to Atty. Gen., R. P. Hertzog, Atty., Bureau of Internal Revenue, of Washington, D. C., and H. M. Holden, U. S. Atty., of Houston, Tex.

John Q. Weatherly, Frank Andrews, and E. J. Fountain, Jr., all of Houston, Tex., for appellee.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This is an appeal from a judgment in favor of the appellee for the alleged amount ($330,393.94) of an overpayment by it of income and profits taxes of the appellee and an affiliated corporation for the calendar year 1918, with interest on that amount. A jury was waived, and the issues were tried by the court. By successive waivers the appellee waived the statute of limitations and extended the time for assessing and collecting the tax for the year 1918 to a date later than that of the disallowance by the Commissioner of Internal Revenue of appellee's filed claim for a refund of the amount of income and profits taxes for the year 1918 alleged to have been overpaid by the appellee. In July, 1924, a revenue agent to whom the matter had been assigned submitted to the Bureau of Internal Revenue a report and recommendations as to his audit and investigation of the books and returns of the appellee for the calendar years 1918, 1919, and 1920. In that report the revenue agent showed a net loss of appellee for the year 1919 which he deducted from the net income disclosed by that report for the year 1918, with a result that no taxable income was shown by that report for the year 1918. On March 11, 1925, the appellee filed a claim for refund of taxes illegally collected for the year 1918, the amount claimed being $282,000, "or such greater amount as may be legally refundable." The reasons stated in that claim for the allowance thereof was that the tax which had been paid was computed and paid without making proper and lawful allowances for depletion and realized appreciation, the respects in which the computation of appellee's invested capital was claimed to be incorrect being specified. In that claim for refund the subjects of deducting 1919 net loss from 1918 net income or of crediting the amount paid by appellee on taxes for 1918 with the amount of an overpayment made by appellee were not mentioned. Between the date of the filing of that claim for refund and December 19, 1929, the date when the Commissioner of Internal Revenue advised the appellee of the final computation of its tax liability for 1918, the appellee filed with the revenue agent in charge additional or supplemental protests relating to the above-mentioned report made by the revenue agent in July, 1924, and also to a supplemental report made by that revenue agent in February, 1928, which also showed that the 1919 net loss was carried back to the year 1918, as provided in the 1918 Revenue Act. Letters of the Commissioner of Internal Revenue to appellee with reference to the Commissioner's audit as to appellee's tax liability for 1918 showed that in that audit the 1919 net loss was applied as "a deduction under section 204 of the Revenue Act of 1918," 40 Stat. 1060 (which is set out in the margin [1]), and that

---

[1] "If for any taxable year beginning after October 31, 1918, and ending prior to January 1, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount of such net loss shall under regulations prescribed by the Commissioner with the approval of the Secretary be deducted from the net income of the taxpayer for the preceding taxable year; and the taxes imposed by this title and by Title III for such preceding taxable year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252. If such net loss is in excess of the net income for such preceding taxable year, the amount of such excess shall under regulations prescribed by the Commissioner with the approval of the Secretary be allowed as a deduction in computing the net income for the succeeding taxable year." Section 204 (b).

the Commissioner's audit was based upon the revenue agent's reports for the years 1918, 1919, and 1920. On December 19, 1929, the Commissioner of Internal Revenue by letter advised appellee of the final computation of the tax liability for 1918, which disclosed that the correct tax for that year was $61,043.82, and that an overassessment of $330,393.94 thereby resulted, but that said overassessment could not be refunded because the refund thereof was forbidden by the statute of limitations. Schedules attached to that letter of December 19, 1929, showed that, in arriving at the amount of the 1918 tax, the Commissioner, after determining the net loss for 1919, deducted that net loss from the 1918 net income. By notice dated January 7, 1930, the Commissioner of Internal Revenue formally rejected appellee's claim for refund. On February 7, 1930, the appellee and said affiliated corporation entered into a written agreement with the Commissioner of Internal Revenue. That agreement, which was approved by the Secretary of the Treasury, provides as follows: "Whereas, the said taxpayers have paid income and profits taxes for the calendar year 1918 in the amount of three hundred and ninety-one thousand, four hundred and thirty-seven dollars and seventy-six cents ($391,437.76); and

"Whereas, it has been determined by the said Commissioner that the taxpayers would be entitled to a refund or credit of three hundred and thirty thousand, three hundred and ninety-three dollars and ninety-four cents ($330,393.94) of the above stated tax payment were it not for the bar of the statute of limitations; and

"Whereas, the taxpayers deny that the bar of the statute of limitations prevents such refund or credit;

"Now This Agreement Witnesseth, that the said taxpayers and said Commissioner of Internal Revenue mutually agree that if it is determined by any court whose decision becomes controlling on the said Commissioner of Internal Revenue that the bar of the statute of limitations does not prevent the credit or refund of said three hundred and thirty thousand, three hundred and ninety-three dollars and ninety-four ($330,393.94), then the total amount of the taxpayers' income and profits tax liability for the calendar year 1918 is sixty-one thousand, forty-three dollars and eighty-two cents ($61,043.82); but if it is determined by any court whose decision becomes controlling upon the taxpayers that refund or credit of said three hundred and thirty thousand, three hundred and ninety-three

dollars and ninety-four cents ($330,393.94) is barred by the statute of limitations, or if the Commissioner's determination as to the statute of limitations is not contested in court (it being mutually agreed that no issue other than the bar of the statute of limitations may be contested in court), then the total amount of the taxpayers' income and profits tax liability for the calendar year 1918 shall be considered to be three hundred and ninety-one thousand, four hundred and thirty-seven dollars and seventy-six cents ($391,437.76), the amount determined under either alternative set forth above to be final and conclusive if this agreement is approved by the Secretary of the Treasury, or the Undersecretary, within six months from the date this agreement is signed by the taxpayers."

The making of the above set out agreement was the exercise of the power or authority conferred by a statute (Revenue Act 1928, § 606, 45 Stat. 874 [26 USCA § 2606]), which provides that the Commissioner of Internal Revenue is authorized to enter into an agreement in writing with any person relating to the liability of such person in respect to any internal revenue tax for any taxable period ending prior to the date of the agreement; that such agreement, when approved as this one was, is final and conclusive, except upon a showing of fraud or malfeasance or misrepresentation of a material fact; and that, in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded. That agreement showed that it had been determined by the Commissioner that the taxpayers would be entitled to a refund or credit of $330,393.94 of the $391,437.76 paid by the taxpayers, on account of income and profit taxes for the year 1918, were it not for the statute of limitations, and that agreement in effect provided that the credit or refund of said $330,393.94 should be allowed if it is determined by any court whose decision becomes controlling on the Commissioner of Internal Revenue that the bar of the statute of limitations does not prevent such credit or refund.

The statute (26 USCA § 156) which makes the right to maintain in any court a suit or proceeding for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected does not purport to create a time limitation on the exercise by the Commissioner of Internal Revenue of his power to determine the amount of

income or profits taxes due for any year and to allow a refund of the amount of taxes found to have been illegally collected. The Revenue Act of 1926, 44 Stat. 66, § 284 (a), (b) (1), (g), 26 USCA § 1065 (a), (b) (1), (g), contains the provisions set out in the margin.[2] Those provisions are not affected by the Revenue Act of 1928, as shown by the first section of that act, 45 Stat. 795 (26 USCA § 2001). The provisions of the Revenue Act of 1926 which are set out in the margin show that it is the duty of the Commissioner of Internal Revenue, where there has been an overpayment of any income or profits tax imposed by the Revenue Act of 1918, to credit the amount of such overpayment against any income or profit taxes then due from the taxpayer, if the taxpayer has, within the time prescribed, filed a claim therefor. Nothing in those provisions indicates that, as to the time of its exercise, the power of the Commissioner of Internal Revenue in reference to crediting or refunding overpaid taxes is dependent upon anything except the filing by the taxpayer, within the time prescribed, of a claim therefor, those provisions containing no requirement that the prescribed claim contain a statement of the facts or theory upon which the claim is based. It seems that to authorize the Commissioner to allow the refund of overpaid taxes he need only have a timely filed claim therefor before him, whether that claim does or does not state the facts upon which an allowance of the claim may be based. Factors' & Finance Co. v. United States (Ct. Cl.) 56 F.(2d) 902.

But even if the quoted provisions of the Revenue Act of 1926 as to the filing of a claim are to be understood as referring to such a claim for refund as is in conformity with the Treasury Regulation as to claims for refund which was in force when appellee's claim was filed (Regulations 69, art. 1304), the result is the same. Though the claim for refund filed by the appellee properly may be

regarded as failing to comply with the requirement of the regulation that "all facts relied upon in support of the claim * * * be clearly set forth in detail under oath," it was open to the Commissioner to waive compliance with that regulation, to dispose of the claim on its merits, and in doing so to consider any fact having a bearing on the question whether the taxpayer is or is not entitled to a refund. Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253; United States v. Memphis Cotton Oil Co., 288 U. S. 62, 71, 53 S. Ct. 278, 77 L. Ed. 619; Snead v. Elmore (C. C. A.) 59 F.(2d) 312. It plainly appears that the Commissioner of Internal Revenue considered on its merits the question of overpayment by the appellee on its 1918 income and profits taxes, that, in computing the amount of such taxes for that year payable by the appellee, the Commissioner deducted the ascertained net loss of the appellee in the year 1919 from the ascertained net income of the appellee in the year 1918, and determined the amount of the overpayment made by the appellee on account of its income and profits taxes for the calendar year 1918. No statute of limitations affected the power or right of the Commissioner to allow a refund to appellee of the amount of the overpayment so ascertained.

■ Furthermore, the failure of appellee's claim for refund to mention or refer to the subject of crediting on the amount of taxes due from appellee for the year 1918 the amount of an overpayment made by it on account of income and profits taxes for that year was not a failure to comply with the requirement of the above-mentioned regulation. The fact that appellee was entitled to such deduction or credit was not one relied upon in support of its claim for refund. It was not made to appear that in any computation by a tax official of appellee's income and profits taxes for the year 1918 was there a failure to credit the amount paid by the appellee on ac-

2 "Sec. 284. (a) Where there has been an overpayment of any income, war-profits, or excess-profits tax imposed by * * * the Revenue Act of 1918 * * * the amount of such overpayment shall * * * be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer.

(b) (1) No such credit or refund shall be allowed or made after three years from the time the tax was paid, in the case of a tax imposed by this Act (Act Feb. 26, 1926), nor after four years from the time the tax was paid in the case of a tax imposed by any prior Act, unless before the expiration of such period a claim therefor is filed by the taxpayer.

(g) If the taxpayer has, within five years from the time the return for the taxable year 1917 was due, filed a waiver of his right to have the taxes due for such taxable year determined and assessed within

five years after the return was filed, or if he has, on or before June 15, 1924, filed such a waiver in respect of the taxes due for the taxable year 1918, then such credit or refund relating to the taxes for the year in respect of which the waiver was filed shall be allowed or made if claim therefor is filed either on or before April 1, 1925, or within four years from the time the tax was paid. * * * If any such waiver so filed has, before the expiration of the period hereof, been extended either by the filing of a new waiver or by the extension of the original waiver, then such credit or refund relating to the taxes for the year, in respect of which the waiver was filed shall be allowed or made if claim therefor is filed either (1) within four years from the time the tax was paid, or (2) on or before April 1, 1926, in the case of credits or refunds relating to the taxes for the taxable years 1917 and 1918. * * *"

218

count of its 1918 income and profits taxes with the amount of the ascertained overpayment. The claim of a right to a refund was based, not on a failure of tax officials to allow a credit for an overpayment, but on an alleged failure to allow the amount of credit to which the appellee was entitled. At the time appellee's claim for refund was filed it had been disclosed that the tax officials in computing appellee's tax liability for the year 1918 allowed a credit for an overpayment of taxes for that year. It seems plain that, when appellee's claim for refund was filed, appellee did not believe, and had no reason to believe, that a failure to allow such credit had occurred or would occur. The provision of the Treasury regulation as to setting forth in a claim for refund all facts relied on in support of that claim cannot reasonably be understood to require the setting forth of a fact not so relied on, or of a nonexistent fact which the taxpayer did not believe existed.

The Commissioner of Internal Revenue having determined that appellee was entitled to a refund or credit of $330,393.94 if there is no statute of limitations barring such refund or credit, and there being no statute of limitations creating such a bar, the judgment under review was not erroneous.

That judgment is affirmed.