## BEAVERDALE MEMORIAL PARK, Inc. v. UNITED STATES.

### No. 706.

District Court, D. Connecticut.

Nov. 5, 1942.

---

Bronson, Rice, & Lyman and Charles M.
Lyman, all of New Haven, Conn., for
plaintiff.

Robert P. Butler, U. S. Atty., and Valentine J. Sacco, Asst. U. S. Atty., both of Hartford, Conn., for defendant.

SMITH, District Judge.

This is a suit against the United States of America seeking recovery of $1,886.84 paid as taxes, penalty, and interest for the years 1936, 1937, 1938, and 1939, under the provisions of Chapter IX of the Social Security Act, 42 U.S.C.A. § 1101 et seq., and the corresponding sub-chapter (c) of Chapter IX of the Internal Revenue Code, 26 U.S. C.A. Int.Rev.Code § 1600 et seq.

No returns were filed by the plaintiff covering the employees here in question until May 26, 1939. At that time, delinquent returns were filed following a ruling of the Collector of Internal Revenue that the plaintiff was subject to the tax. At the same time, the Unemployment Compensation Division of the State of Connecticut required the filing of returns under the State act. In computing the tax due from the plaintiff, it was allowed ninety percent credit for the amount paid to the State. Ten percent of the tax was paid to the United States, together with twenty-five percent delinquent penalty and interest. Claims for refunds were filed in October, 1940, claiming that the Internal Revenue officials had erroneously included, in computing the number of employees, plaintiff's president, vice president, sales agent, and four salesmen who work under the sales agent. In August, 1940, the Supreme Court of Errors of the State of Connecticut ruled that the sales agent and salesmen were not employees of the plaintiff under the State act. About April, 1941, the claims for refunds were rejected and the plaintiff was required to pay to the United States the ninety percent credit which had previously been allowed it, since it then appeared that no payments to the State of Connecticut were required which had been the basis for the credit. No additional claims for refunds were filed with respect to these payments of ninety percent of the tax.

Two principal questions are presented in this case: (1) Whether the president and vice president are employees within the meaning of the act. The act contains the following subsection: 26 U.S.C.A. Int.Rev. Code § 1607 (i): "The term 'employee' includes an officer of a corporation." The plaintiff contends that this provision is intended to include officers as employees only if the officers meet the usual requirements of the term "employee" aside from the fact that they hold corporate offices. The plaintiff contends that the functions performed by the president and vice president, limited in this case to calling of meetings of the directors, passing on corporate policies and signing checks on one or two occasions when the secretary–treasurer was not available, do not amount to employment for twenty days within the year, and that they therefore should not be considered employees even though they hold corporate offices.

The statutory provision here involved has given rise to a sharp difference of opinion as to whether, under the provision, it is mandatory to include all officers of a corporation as employees, or merely permissive, to include them as employees if they meet the ordinary tests of employment aside from their holding of corporate offices. The Treasury Department's interpretation of the act, Treasury Regulation 90, Article 205 (employed individuals), includes the following statement: "An officer of a corporation is an employee of the corporation but a director as such is not."

The courts are not in agreement as to the correctness of the Treasury interpretation of the statutory provision, the Circuit Court of Appeals of the First Circuit holding in the case of Deecy Products Co. v. Welch, 1941, 124 F.2d 592, 139 A.L.R. 916, that the statutory provision is permissive, (although in that case the officer, a statutory clerk, was held to meet the employee requirements), the Circuit Court of Appeals for the Tenth Circuit holding in the case of Nicholas v. Richlow Mfg. Co., 1941, 126 F.2d 16, that the provision is mandatory and that the Treasury's construction of the intent of the Congress is correct.

 It would appear that had the Congress intended the provision to be permissive merely, it would have been made to read, "the term 'employees' may include an officer of a corporation." Furthermore, the act was amended subsequent to the promulgation of Treasury Regulation 90, and with that Treasury Regulation before it, the Congress failed to make any change in the wording of this provision, a strong indication that the Treasury interpretation of the intent of the Congress was correct.

 I hold that the president and vice president of the corporation are properly included under the act as employees of the corporation.

(2) The second and principal dispute in this case is as to the status of Eugene A. Sexton in his capacity as sales agent for the plaintiff corporation. Sexton holds, and held at the time of the taxable years in question, positions with the corporation under two titles, listed on two separate contracts, entered into on the same date: the titles of general manager and sales agent. If Sexton as sales agent is an employee of the corporation, four other individuals who were acting as salesmen through the taxable years in question are also employees of the corporation.

The contracts under which Sexton acted were originally entered into in 1929, and have been continued without alteration since that time, the contracts in evidence as Exhibits #9 and #10, being for the third period of years in which these relationships have existed between the corporation and Sexton. There is here no question of a contract set up with the purpose of evading the incidence of the tax but rather of the application of the tax statute to a relationship between the plaintiff and these individuals which had existed long before the Social Security Act was proposed and enacted.

Under the two contracts, Exhibits #9 and #10, Sexton received compensation based on a percentage of the gross income of the corporation from the sale of cemetery lots, which is the principal source of income of the corporation. Under the contract, Exhibit #10, Sexton as general manager is in charge of the management of the cemetery for the corporation, and is admittedly an employee of the corporation. Under the contract, Exhibit #9, Sexton is referred to as agent for the sale of the cemetery lots. The plaintiff contends that, under this contract, Sexton is an independent contractor rather than a corporate employee. Both contracts contain provisions for termination on ninety days' notice by either party. The plaintiff corporation maintains offices in New Haven with one full-time office employee who performs bookkeeping duties both for the corporation and for Sexton as the person in charge of sales. One of the rooms of the offices provided by the corporation is used by the sales force which meets there daily. Advertising, stationery, office rent, telephone, and bookkeeping are provided by the corporation for the sales force at corporate expense. The corporation furnished to the salesmen calling cards designating them as "special representatives" of the corporation. The four salesmen are paid by Sexton by his personal check from the money received by him under the sales contract with the corporation. Sexton has been in complete charge of the salesmen's operations and has engaged and discharged the salesmen. The corporation in its contract with Sexton, Exhibit #9, reserves the right to have removed from the selling organization any employee whom the corporation deems undesirable or inefficient. The corporation has not exercised the right through any of its corporate officers. Sexton has advertised for salesmen and paid for such advertising from his own funds. Since the enactment of the Social Security Act, Sexton has paid Old Age taxes based on the salaries of the salesmen. Because the number engaged by him at any one time has been less than eight, he has not made return for Unemployment taxes under the act.

Under a state of facts practically identical, the Supreme Court of Errors of the State of Connecticut held as a matter of law that Sexton was an independent contractor and not an employee of the plaintiff corporation in his capacity as sales manager. Beaverdale Memorial Park, Inc., v. Danaher, 1940, 127 Conn. 175, 15 A.2d 17. The test of employment used by the court in that case is the existence or nonexistence of the right to control the means and methods of work. The court concedes that the right of discharge is one of the strong indications that the relationship is one of employment, but holds that, on the facts found, no employer-employee relationship could be held to exist.

■ This case does not arise under diversity of citizenship. It requires the construction of the terminology of a federal statute. In this situation, the court is not required by the doctrine of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, to follow the interpretation given by the Supreme Court of Errors of the State to a similar term in a similar state statute. However, it may be observed that the defendant does not question the soundness of the definition by the Supreme Court of Errors of the principal criterion of employer-employee relationship, the right to control the means and methods of work. It is with the application of its definition to the facts of this particular case that the defendant takes issue.

■ The relationships set up under the contracts in this case are not familiar in other lines of business. Their interpretation is not without great difficulty. The right reserved in the plaintiff under Exhibit #9 to have removed from the selling organization any employee whom it deems undesirable and inefficient, together with the control maintained by the corporation over the office, telephone service, stationery, advertising literature, receipt of incoming money and statements of all sales and collections, indicate a close relationship between the sales organization and the corporation. Yet there is no evidence that the corporation in fact interfered in any way with Sexton's sales methods. While the right to have removed any employee it deemed undesirable or inefficient might, standing alone, be said to interfere to some extent with Sexton's independence, the terms of the contract leave him essentially free to decide how to run his sales campaigns, hire his men, and arrange their compensation from his own funds. In practice, he has enjoyed this freedom for more than ten years.

I must conclude that Sexton, as sales agent, is not under the control of the corporation as to his means or methods of work, and that he is, therefore, an independent contractor rather than an employee in his work as sales agent. The four salesmen are, therefore, employees of Sexton rather than of the corporation, and are not to be counted in determining the number of employees under the Social Security Act.

In each of the calendar years 1936, 1937, 1938, and 1939, there were employed by the plaintiff less than eight persons within the meaning of the Act.

■ On this state of facts, plaintiff has paid taxes erroneously assessed, not only on the original amounts for which the claims for refund were rejected, but also with respect to the additional assessments levied when it appeared that no payments to the State of Connecticut were required, which had been the basis for the credits of 90% of the tax used in arriving at the amounts of the first assessments. The Government, on the trial, raised for the first time the defense of the failure of the plaintiff to file additional claims for refund with respect to the additional assessments. Since the facts and the law applicable are the same with regard to the additional assessments and the original assessments based on employment of the same individuals for the identical years, both claims should be disposed of, if possible, in the same proceedings. Tucker v. Alexander, 1927, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253.

■ The Government may insist upon strict compliance with the statutory requirements. Stern v. United States, D.C.Wash. 1929, 40 F.2d 971. The requirement of claim for refund may, however, be waived by the Government. Tucker v. Alexander, supra.

■ The Government had the opportunity, if it desired to insist on the filing of a further claim, of setting forth (under Rule 8(c) Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c), the defense of failure to file the further claim for refund.

■ The case has been tried on a complaint and stipulation of facts showing the payment of the additional assessments by the plaintiff. This course of action on the part of the Government, following a review of the identical state of facts relating to the employment of the men in question over the tax period in question, on the first claim for refund, would make it inequitable to force the plaintiff to the cost and trouble of additional litigation, and must be held to constitute a waiver by the defendant of the right to set up, as a defense, the failure to file a claim for refund of the additional assessment.

Plaintiff is entitled to recover the amounts paid on both the original and additional assessments, with interest.

Judgment may be entered for the plaintiff in accordance with this opinion.