**NATIONAL COMMERCIAL TITLE &
MORTGAGE GUARANTY CO. v.
DUFFY et al.**

Nos. 8000, 8001.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 7, 1942.

Decided Dec. 4, 1942.

James L. R. Lafferty, of Newark, N. J. (Lindabury, Steelman, Zink & Lafferty, of Newark, N. J., on the brief), for the taxpayer.

Paul R. Russell, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, and J. Louis Monarch, Sp. Assts. to the Atty. Gen., Charles M. Phillips, U. S. Atty., and Thorn Lord, Asst. U. S. Atty., both of Trenton, N. J., on the brief), for the Government.

Before BIGGS, MARIS, and JONES, Circuit Judges.

JONES, Circuit Judge.

These appeals grow out of a suit by the plaintiff taxpayer to recover sums paid former Internal Revenue Collectors as capital stock taxes, plus penalties and interest, for the years ending June 30, 1933, to June 30, 1937, both inclusive, under Section 215 of the National Industrial Recovery Act, 48 Stat. 195, 207, and similar provisions of subsequent Revenue Acts.[1] The

---

[1] The relevant provisions of the material Revenue Acts subsequent to the National Industrial Recovery Act are Section 701 of the Revenue Act of 1934; 48 Stat. 769, 770, 26 U.S.C.A. Int.Rev.Acts, page 787, and Section 105 of the Revenue Act of 1935, 49 Stat. 1017, as amended by Section 401 of the Revenue Act of 1936, 49 Stat. 1733, 26 U.S.C.A. Int.Rev. Acts, page 798.

plaintiff's right to the recovery sought depends upon the merit of its claims to exemption. It alleges that (1) it was an insurance company, subject as such to income tax liability under Section 204 of the Revenue Act of 1932, 26 U.S.C.A. Int. Rev.Acts, page 548, and the similar provisions of subsequent Revenue Acts during the taxable years in question, and that (2) it was not carrying on or doing business during the taxable years, and contends that it was therefore relieved by the revenue laws of liability for the capital stock tax.

Section 215 of the National Industrial Recovery Act and similar provisions of the material subsequent Revenue Acts provide that the capital stock taxes thereby imposed shall not apply "to any insurance company subject to the tax imposed by [various sections of the Revenue Acts providing for the taxation of the net income of different kinds of insurance companies]" or "to any domestic corporation * * * if it did not carry on or do business [during specified portions of the respective taxable years]."

The court below, to which the case was tried without a jury, found that "the greater part of [the plaintiff's] income during the years in controversy was derived from non-insurance sources." [42 F.Supp. 844, 847.] The court thereupon concluded as a matter of law that the "Plaintiff * * * failed to sustain its burden of proving that it was entitled to have its income tax liability determined under the provisions of the federal revenue laws applicable to insurance companies."

The trial court also found, however, that the plaintiff did not carry on or do business after March 6, 1933. This finding automatically excluded the plaintiff from having done business during the critical periods specified by the relevant statutory provisions. But the court held that, inasmuch as the latter ground had not been assigned by the taxpayer as a basis for the claim for refund which it had filed with the Commissioner, recovery was necessarily to be limited to the years not barred by the statute of limitations, viz., the years ending June 30, 1935, June 30, 1936, and June 30, 1937, or, in other words, to the years for which an amended or supplemental claim for refund might yet be filed. The court entered judgment for the plaintiff accordingly and both parties have appealed.

The plaintiff assigns for error the trial court's failure to award it recovery on the ground that it was an insurance company exempt from the capital stock tax during all of the years (five) in controversy, while the appellant defendants assign for error the action of the court below in allowing the plaintiff a recovery in part on a basis not set forth in the claim for refund as filed with the Commissioner.

Neither Section 215 of the National Industrial Recovery Act nor the similar provisions in the subsequent revenue laws define an "insurance company". Nor do they specify any criteria for determining the existence of that status. The burden of establishing clearly that a particular corporation is an insurance company within the meaning of the revenue laws rests upon the taxpayer so asserting. Unless that burden be met, the company must be held liable for the capital stock tax as in the case of the ordinary corporation. Bowers v. Lawyers' Mortgage Co., 285 U. S. 182, 187, 52 S.Ct. 350, 76 L.Ed. 690. While the name, charter powers and subjection to state insurance laws are of significance in discovering the character of business which a corporation is authorized to conduct and intends to carry on, in the final analysis it is the business actually done during the years under inquiry which determines whether the subject company is taxable as an insurance company. Bowers v. Lawyers Mortgage Co., supra, 285 U. S. at page 188, 52 S.Ct. 350, 76 L.Ed. 690, citing United States v. Phellis, 257 U.S. 156, 168, 42 S.Ct. 63, 66 L.Ed. 180, and Weiss v. Stearn, 265 U.S. 242, 254, 44 S.Ct. 490, 68 L.Ed. 1001.

Giving full effect, therefore, to the trial court's findings with respect to the more formal indicia afforded by the purposes and powers of the taxpayer corporation, we pass to a consideration of the business it actually conducted and the sources and character of its income receipts. In passing, it may be conceded that the business of guaranteeing the payment of principal and interest of mortgage loans, which the taxpayer in this case was empowered to, and did, perform, constituted insurance business. United States v. Home Title Insurance Co., 285 U.S. 191, 195, 52 S. Ct. 319, 76 L.Ed. 695. But the question still remains whether the plaintiff derived the principal portion of its income during the taxable years in question from its insurance business or from investments or other sources unrelated to the business of insuring.

Schedules segregating and identifying the amounts and sources of the taxpayer's various income receipts for the years in question were put in evidence at trial. As to the figures and descriptions of the several items, the contesting parties are for the most part in agreement. The important cleavage between them arises in respect of the proper allocation of the various items as between insurance income and non-insurance income. Thus the taxpayer would include as insurance income eight items[2] (exclusive of receipts from underwriting) which, according to the defendants' contention, cover non-insurance income. These same income items are set forth for each of the years in question, but there is no need for the purposes of our present problem to examine them separately as the amounts do not vary sufficiently from year to year to have any appreciable effect upon the issue as to what portion of the taxpayer's income was insurance income and what portion was non-insurance income.

From the record in this case it is quite apparent that the plaintiff, in order to show that the greater portion of its income was derived from its insurance business, finds it necessary to include as insurance income the income from its relatively large invested capital, which was many times the reserve required of it by the New Jersey insurance laws to which it was subject.[3] The particular items of income which the taxpayer would so include as insurance income are from sources normally incident to the business of investing or lending money; and where the income of a taxpayer is derived primarily from such sources the company is not an insurance company within the meaning of the revenue laws here under consideration. Bowers v. Lawyers Mortgage Co., supra, 285 U.S. at pages 188–190, 52 S.Ct. 350, 76 L. Ed. 690. The proofs in this case fail to establish the basis for any different conclusion. The trial judge was therefore warranted in finding that the greater portion of the taxpayer's income was derived from non-insurance sources and in concluding that the plaintiff was not taxable as an insurance company during the years in controversy. That the taxpayer was not exempt from the capital stock tax followed as a matter of specific statutory prescription.

The defendants, as cross-appellants, contend that the court below was without jurisdiction of the plaintiff's suit insofar as the claims for refund were based on the allegation that the plaintiff was not doing business during the years in question.

Section 3772 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3772, provides that no suit shall be maintained to recover taxes alleged to have been erroneously or illegally assessed until a claim for refund has been duly filed with the Commissioner in accordance with the provisions of the pertinent law in such regard and the relevant regulations which the Secretary of the Treasury has duly promulgated. Treasury Regulations 86, Art. 322-3, provides that claims for refund shall be made on a form prescribed and that the claim "must set forth in detail and under oath each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof." Section 3313 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3313, provides that the period of limitations upon claims for tax refunds or tax credits shall be four years after payment of the tax giving rise to the claims.

We think the question of the court's power to hear and determine the plaintiff's claim to refund goes to the scope of the plaintiff's right of action rather than to the court's jurisdiction of the subject matter. The fact that the defect due to

---

[2] The eight items as listed for the year ending June 30, 1932, which are the same for the other years involved except for amounts, are as follows:

(1) Interest on Mortgages owned and held by the Company ............$107,964.53
(2) Income from investments in stocks and bonds.... 14,503.05
(3) Income from appraisals, recordings, etc. (Net)... 3,192.04
(4) Interest on deposits, etc... 2,167.90
(5) Interest on Foreclosures in Suspense ............ 23,287.03
(6) Interest on Notes Receivable ................. 13,410.49
(7) Interest on Insurance Premiums & Taxes Paid... 1,325.82
(8) Gross Rent Income from Real Estate owned by the Company ........ 158.50

[3] See Sections 8 and 10 of the New Jersey Laws of 1902, ch. 134, as amended by ch. 121 of the New Jersey Laws of 1913, R.S. 17:20-1 and R.S. 17:20-2, N.J.S.A. 17:20-1, 17:20-2.

omission from a claim for refund of a ground later advanced in a suit therefor may be waived by the government or corrected by proper amendment of the taxpayer suggests the presence of jurisdiction. Real Estate Land Title & Trust Co. v. United States, 309 U.S. 13–18, 60 S. Ct. 371, 84 L.Ed. 542; United States v. Felt & Tarrant Manufacturing Company, 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025.

In the instant case, the claims for refund were filed timely although only on the ground that the taxpayer was an insurance company exempt from liability for the capital stock tax. These claims having been denied by the Commissioner, the conditions precedent which are requisite to a suit for the recovery sought were present. However, no amendment of the claim was offered before the Commissioner in order to embrace the ground that the taxpayer was not doing business during the years in question, nor were any facts shown which either express or imply a waiver by the government of the exceptionable omission. In view of the government's insistence upon the objection at trial, the case would seem to be one which called for the court's exclusion of the basis for refund which the taxpayer anachronously included. However, in Tucker v. Alexander, 275 U. S. 228, 231, 48 S.Ct. 45, 46, 72 L.Ed. 253, the Supreme Court said, by way of dicta, that,

"The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial. Failure to observe them does not necessarily preclude recovery. If compliance is insisted upon, dismissal of the suit may be followed by a new claim for refund and another suit within the period of limitations. If the Commissioner is not deceived or misled by the failure to describe accurately the claim, * * * it may be more convenient for the government and decidedly in the interest of an orderly administrative procedure that the claim should be disposed of upon its merits on a first trial without imposing upon government and taxpayer the necessity of further legal proceedings."

It was presumably in keeping with the views of the Supreme Court as above quoted, that the court below deemed the instant case to be one for adjudication on its merits to the extent that the claims in suit, based on the added ground, were not barred by the statute of limitations. In so proceeding to a disposition of the timely claims on their merits, we think the trial court was fully justified. The facts as to what business the taxpayer had or had not done during the years under consideration were in no wise disputed. The Commissioner could hardly be said therefore to have been misled or disadvantaged when the additional ground was later asserted. The ultimate question was one of law. The trial court resolved that question in the plaintiff's favor to the extent of the claims not barred by limitations. Therein, we think the court erred and that, under the undisputed facts, the taxpayer must be held to have carried on and done business throughout the tax years in question.

The restrictions upon the taxpayer's business and the extent to which it operated during the years 1933 to 1937, both inclusive, were the result of the following requirements. By Executive Order of March 10, 1933, No. 6073, 12 U.S.C.A. § 95 note, the term "banking institution", as used in the Presidential Proclamation of March 6, 1933, No. 2039, 12 U.S.C.A. § 95 note, proclaiming a "bank holiday", was interpreted as embracing "all corporations whose principal business consists of investment in, sale and purchase of real mortgages and mortgage certificates guaranteed by such corporation". The immediate effect of the Presidential Proclamation, as thus interpreted, was to restrict the taxpayer's business activities. On March 16, 1933, a statute of New Jersey was enacted relating to "guaranteed mortgages and interests in or obligations secured by mortgages issued by or guaranteed by any * * * mortgage guaranty company * * * of this State and conferring powers upon the Commissioner of Banking and Insurance with respect thereto, and upon such companies".[4] Pursuant to the powers thus conferred upon him, the New Jersey Commissioner of Banking and Insurance, on March 21, 1933, promulgated General Order No. 1, which, inter alia, suspended the making of mortgage loans by mortgage guaranty companies and ordered such companies to submit as soon as practicable, and not later than June 1, 1933, a plan to protect the interests of the holders of extant guaranteed mortgages and to meet the con-

---

4 Chapter 71, page 133, of the New Jersey Laws of 1933.

ditions resulting from the then existing emergency. From these plans the Insurance Commissioner determined what measures were required "to conserve the assets of such companies and secure ratable and equitable application thereof, and provide proper safeguards for the security of those having claims thereon." Appendix to Plaintiff-Appellant's Brief, p. 88a.

The present taxpayer complied with the Insurance Commissioner's order and duly submitted to him a plan of operation which, after having been approved by the Insurance Commissioner, was submitted by the taxpayer to its policy holders and creditors on January 10, 1934. The plan, by its terms, was to (and did) continue in force until July 1, 1940. The period covered by the plan and the order of the Insurance Commissioner thus embraced the years for which the taxpayer's liability for the capital stock tax is here involved. After March 10, 1933, the taxpayer did not make any new mortgage loans or issue any new guaranty policies except as required by renewals or extensions of theretofore existing loans or policies. But, as thus restricted the taxpayer did continue to operate throughout the period in question as a going concern for profit with respect to policies already outstanding and the investment and conservation of its assets.

Treasury Regulations 64, Art. 43(a) (5), 1936 Ed., pertaining to § 105 of the Revenue Act of 1935, provides, in material part, that "the orderly liquidation of property by negotiating sales from time to time as opportunity and judgment dictate and distribution of the proceeds as liquidation is effected" constitutes "doing business". In Magruder v. Washington, Baltimore & Annapolis Realty Corp., 316 U.S. 69, 62 S.Ct. 922, 86 L.Ed. ——, the Supreme Court held that regulation valid and an appropriate aid in eliminating confusion and uncertainty created by close cases. While the question as to whether the taxpayer in the Magruder case was "doing business" arose under Section 105(a) of the Revenue Act of 1935 and subsequent Acts (statutory provisions also applicable here as to the later years involved), substantially similar provisions of the earlier regulations (Art. 32 and Art. 33, Regulations 64, 1934 Ed., pertaining to the Revenue Act of 1934) were approved and followed in United States v. Peabody Co., 6 Cir., 104 F.2d 267, 270. No good reason appears why the regulations are not also applicable to the facts of the present case. The conclusion is

therefore inescapable that the instant taxpayer did carry on and do business throughout the years here involved and is not entitled to the particular exemption claimed.

The judgment of the District Court is reversed and the case remanded with directions to enter judgment for the defendants at the cost of the appellant plaintiff.