## SOUTH COAST CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

No. 12606.

United States Court of Appeals
Fifth Circuit.

March 16, 1950.

Orrin G. Judd, New York City, Joseph Eisner, New York City, for petitioner.

George D. Webster, Ellis N. Slack, Fred E. Youngman, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Bur. Int. Rev., Washington, D.C., Raymond F. Brown, Sp. Atty., Bur. Int. Rev., Washington, D.C., for respondent.

Before HUTCHESON, Chief Judge, and WALLER and BORAH, Circuit Judges.

WALLER, Circuit Judge.

Petitioner, successor to South Coast Company, an extensive grower of sugar cane, a larger refiner of sugar, and a quondam maker of molasses, received a disallowance, by the Commissioner of Internal Revenue and by The Tax Court, of its claim in the sum of $244,424.40, for a refund of processing taxes paid by it and its predecessor under the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq.

After the decision in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, declaring the taxing provisions of the Agricultural Adjustment Act unconstitutional, Congress, by Title VII, Sec. 901 et seq., of the Revenue Act of 1936, 7 U.S.C.A. § 644 et seq., set up an exclusive method [1] whereby refunds of processing taxes illegally exacted under the 1933 Act might be obtained.

Under Section 902(a) of the 1936 Act it is incumbent upon a claimant to establish the fact that he bore the burden of the tax, and has not been relieved thereof, nor reimbursed therefor, nor shifted such burden, directly or indirectly, "(1) through inclusion of such amount * * * in the price of any article * * * or in any charge or fee for services or processing;

---

[1]. Webre Steib Co. v. Commissioner, 324 U.S. 164, text 175, 65 S.Ct. 578, 89 L.Ed. 819.

(2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; * * *."

This burden may be discharged under the 1936 Act—hereinafter referred to as "the Act"—either by direct proof of the actual extent to which the claimant bore the burden of the tax or by comparative computations of margins submitted under the authority of, and in conformity to, Section 907 of the Act, which provides that in a claim for refund predicated upon comparative margin data it shall be *prima facie* evidence that the burden of such tax was borne by the taxpayer to the extent that the average margin per unit of the commodity processed was lower during the tax period than was the average margin during the period of twenty-four months before and six months after the tax. The twenty-four-month period before, and six months after, the tax is designated as the "base period" and ran from June 8, 1932, to June 8, 1934, and from February 1, 1936, to and including July 31. The "tax period", with respect to which taxes were paid, began on June 8, 1934, and ended on November 30, 1935.

Section 907(e) of the Act provides that any presumption created by the aforementioned comparison of base period and tax period margins might be rebutted either by the claimant or by the Commissioner by proof that the marginal difference was attributable to the tax, or to factors other than the tax; by showing changes in contracts so as to include the tax in selling price; or showing increase in commodity price in substantially the amount of the tax; or showing that tax was separately billed; or by any other proof indicative of a shift of the burden of the tax from the taxpayer to others.

In the present case the claimant submitted computations of base period margins for only the eight-month period, October 1, 1933, to June 7, 1934, instead of for the entire twenty-four months of the pre-tax portion of the base period, and for only four out of the six months of the post-tax portion of the base period. In other words, instead of submitting with its claim marginal data for the entire thirty months of the base period, it submitted such data for only twelve months of that period for comparison with the margin which it submitted for the tax period. In the taxpayers' claim it set up an average margin per pound of raw sugar processed during the tax period of $.00597131 and a margin per pound for the base period of $.01205615, with the result that the average margin for the base period exceeded the average margin for the tax period by $.00608484 per pound. Hence by these figures and by this method taken from its records during the twelve months that it was engaged in processing sugar (as distinguished from the thirty months provided as the statutory base period) the taxpayer attempted to show, and insists that it did show, a *prima facie* case of absorption of the tax.

As stated above, no marginal data was furnished by the claimant for those months of the statutory base period in which processing was not carried on, nor, in lieu thereof was there any showing of "average prices paid or received by representative concerns engaged in a similar business and similarly circumstanced", as authorized by Section 907(c).[2]

The process of cutting and grinding sugar cane and converting its juice into raw sugar is a seasonal business extending only for four or five months in the autumn and winter of each year. Taxpayer, however, was also engaged in the year-round business of planting, cultivating, harvesting, and grinding its sugar cane, as well as in grinding that which it purchased from others. After grinding it engaged in processing the cane juice into raw and refined sugar. In view of the seasonal nature of its processing it insists: (a) that it should not be expected to submit marginal data for months in which it was

2. Section 907(c) provides, among other things, that: " * * * If the claimant was not in business during the entire period before and after the tax, the average margin, during such period, of representative concerns engaged in a similar business and similarly circumstanced, as determined by the Commissioner, shall be used as his average margin for such period."

not processing; (b) that the law did not require, and the Commissioner did not suggest, request, or require, claimant to submit marginal data of representative concerns similarly circumstanced covering the months of the base period in which no processing was done by the claimant; (c) that the Commissioner had examined and allowed claims of other processors, to wit, Webre Steib Company, based upon the experience of only the months in which the processing took place, without requiring comparative data of representative concerns; (d) that the Commissioner examined taxpayer's claim on its merits without at any time calling upon it to furnish comparative data of representative concerns or data as to other months in the base period; and (e) that after it became known from the brief of the Commissioner, filed after the hearing before The Tax Court, that the point was being then raised by the Commissioner, it requested, and was wrongfully denied, permission by The Tax Court to submit such data.

The case was submitted to The Tax Court upon stipulations, oral testimony, and documentary evidence offered by the claimant and by the Commissioner.

The computations of Petitioner showed that it and its predecessor had refined over sixty-one million pounds of raw sugar during the base period and approximately forty-nine million pounds during the tax period, and that it had realized an average of $1.23 per cwt. for this sugar during the base period as compared with an average margin of $.76 per cwt. during the tax period, wherefore it contended that these marginal computations revealed an absorption by it of $.47 per cwt. out of the $.535 per cwt. tax. These computations, if in compliance with the statute and based upon correct factors, would have made out a *prima facie* case of the absorption of the economic burden of the tax by the claimant.

Before the Tax Court the Commissioner undertook to rebut the taxpayer's marginal evidence by showing the following: (1) a failure in taxpayer's computations to give effect to the fact that on the day the processing tax of $.535 per cwt. on refined sugar went into effect [June 8, 1934] the list price on refined sugar was increased by claimant and sugar refiners generally by $.55 per cwt.; (2) a failure in claimant's computations to take into consideration the Federal parity payments made during the tax period for sugar cane acreage reductions; (3) the failure of the taxpayer to allocate the cost of sugar produced from stubble cane to each of the years in which cane was gathered from the stubble; (4) the inclusion, in the computation, of the experience of the taxpayer only in the months in which processing was done or for only twelve out of the thirty months of the base period; (5) certain letters of the taxpayer which indicated, or tended to indicate, that the taxpayer either passed on, or undertook to pass on, the burden of the tax to at least some of its customers.[3]

---

3. On January 20, 1938, C. F. Dalberg, President of Petitioner, addressed a letter to one of its customers in regard to the tax on fifty bags of its sugar, stating:
"2. The processing tax on same was included in the price as a cost of the sugar, but not as a separate item.
"3. So far as this company is concerned, we know of no refund that you have received on account of processing taxes, or any other item covering this sugar.
"4. You are not entitled to a refund from us of the processing tax, or any other item in connection with this shipment. Processing taxes were a part of our cost just as much as bags, twine, labor, fuel, etc., and were added in as

such by us; and whether processing taxes were reduced or increased made no difference whatever in the contract existing between you and ourselves, which called for the delivery of a certain amount of sugar at a certain fixed price without any reference whatever to the processing tax in question."
On October 24, 1936, the Vice-President of the taxpayer wrote a customer as follows: "In response to your letter of October 22nd: We advise that processing tax of 53½¢ per cwt. was included in the cost of 'White Gold' Pure cane Sugar shipped to you on January 3, 1936, according to our invoice number 60."
On October 24, 1934, the Receivers of the predecessor of taxpayer wrote a let-

Taxpayer undertook to show in rebuttal: (1) that the raise in the list price of the refined sugar on the date that the tax went into effect was not attributable to the imposition of the processing tax on that date but was caused by the limitation in the supply of sugar available to the American market under the quota system established by the Jones-Costigan Act, 7 U.S.C.A. § 608 et seq., which became effective on the same date as the processing tax, and which restricted the source of supply of raw sugar in the United States;[4] (2) that the sugar prices advanced in 1936 after the invalidation and discontinuance of the processing tax; (3) that although the list price of sugar was raised on the effective date of the Act, nevertheless the taxpayer was unable to sell to any other than its own four commissaries an appreciable amount of sugar at the list price but, in fact, sold substantially all of its sugar at prices much less than the list price; (4) that its records and margin evidence presented a fair comparison of its operations during the tax period and the base period and that the data of representative concerns authorized by Section 907 (c) was not necessary.[5]

The Tax Court reserved ruling on the admission of testimony of Dr. Coulter wherein he undertook to demonstrate that the cause of the rise in the price of sugar was brought about by the restriction of the quota of sugar receivable from Cuba and the insular possessions of the United States, but in its final decision held that this evidence was not admissible because it did not appear that such evidence or contention had ever been submitted to the Commissioner prior to his disallowance of the claim. For the same reason the Court disallowed the application of the taxpayer to be permitted to amend its marginal computations by including the experience of similar concerns for the omitted months in the base period.

The questions involved here are simple of statement but difficult of solution. They are: (1) Whether or not the Petitioner and its predecessor corporation absorbed any part or all of the burden of the processing taxes paid by them. (2) If the Petitioner and its predecessor did absorb the tax so paid, was it proven? (3) if claimant failed to prove it, did it, under the circumstances of this case, have a right to make such proof, and was such right unlawfully denied by The Tax Court?

■ It is well settled: (1) that the taxpayer, under Section 902 and the regulations prescribed thereunder, must carry the burden of establishing his claim to the satisfaction of the Commissioner, or to the satisfaction of The Tax Court, upon appeal, that he bore the burden of the tax and did not pass it on to others in any manner whatsoever; (2) that under Section 903 no refund shall be made or allowed unless a claim has been filed in accordance with the statute providing that "all evidence relied upon in support of such claim shall be clearly set forth under oath", and likewise under Treasury Regulation 96, Article 202,

ter to the Collector of Internal Revenue in New Orleans stating:

"* * * it would seriously hamper our operations and inflict a great hardship on us if we were now required to pay the full processing tax on the sugar in question before same is collected by us. To do so would mean that we would have to use our operating money for that purpose.

* * * * * * *

"For the reasons cited above, we ask that we be allowed at this time to make a partial payment to the extent that we ourselves have collected such tax amounting to, as indicated above, $24,423.82; we respectfully request an extension of ninety days for the payment of the balance, by which time we expect all of the sugar in question to have been billed out and paid for."

4. This evidence was offered by the taxpayer through the testimony of Dr. John Lee Coulter for the purpose of rebutting the Commissioner's contention that the price of sugar was raised on the effective date of the Act in almost the exact amount of the tax in order to pass the tax on to customers.

5. The taxpayer further says that if the data of representative concerns was necessary, the question was not raised until the brief of the Commissioner was filed in The Tax Court, after the trial, and that The Tax Court should have sustained its motion to reopen the case to allow it to submit such comparisons of representative concerns.

providing that: "Each claim shall set forth in detail and under oath each ground upon which the refund is claimed," and that "It is incumbent upon the claimant to prepare a true and complete claim and to substantiate by clear and convincing evidence all the facts necessary to establish his claim to the satisfaction of the Commissioner; failure to do so will result in the disallowance of the claim."; (3) that under Article 605 of Regulation 96 all elements, factors, units, or measures enter into the computation of such margins, and any departure from uniformity in the use thereof in making such computations for any part of either period must be fully explained and justified; (4) that under Article 606 of the Regulation, as well as under the statute, in addition to the showing as to margins the claimant is privileged to include with his claim any other evidence available to him tending to show that he bore the burden of the tax; and (5) that under the statute either the claimant or the Commissioner may rebut the presumption established by the computation and comparison of margins by proof of actual extent to which the claimant shifted to others the burden of the processing tax.

We agree with The Tax Court that the claimant's marginal data did not strictly comply with the statute in failing to include in the computation of margins the entire base period, as well as the tax period; or, in lieu thereof, to include in the computation and claim the average margin, during such period, of representative concerns engaged in a similar business and similarly circumstanced for use as the average margin for such omitted parts of the period as were not contained in the computation of its own operations.

It seems clear that, in providing a statutory waiver of the sovereign immunity to suit, Congress may impose such conditions as it chooses. Nichols v. United States, 7 Wall. 122, 19 L.Ed. 125; Luckenbach Steamship Company v. United States, 272 U.S. 533, 47 S.Ct. 186, 71 L.Ed. 394; Angelus Milling Company v. Commissioner, 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619. Likewise it would seem that Congress, in passing the present statute allowing suits against the sovereign for recovery of processing taxes, could prescribe the type and extent of proof necessary to establish a *prima facie* showing of absorption of the tax. See Jaubert Brothers v. United States, 5 Cir., 141 F.2d 206; Commissioner of Internal Revenue v. Webre Steib Company, Ltd., 5 Cir., 140 F.2d 768; Savannah Sugar Refining Corporation v. Commissioner, 5 Cir., 121 F.2d 426. Moreover, statutes waiving such sovereign immunity must be strictly construed. See Rambo v. United States, 5 Cir., 145 F.2d 670; United States v. Durrance, 5 Cir., 101 F.2d 109; Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108; Price v. United States, 174 U.S. 373, 19 S.Ct. 765, 43 L.Ed. 1011; United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598; Munro v. United States, 303 U.S. 36, 58 S.Ct. 421, 82 L.Ed. 633.

The burden is on a claimant who seeks to make out a presumptive case under the statute of having absorbed the tax to show by the comparative margins that his cost was lower during the base period than during the tax period. He cannot insist that such a presumption has been created in his favor by resort only to such parts of the statute, or only to such parts of either the base period or the tax period, as he deems suitable for his purpose. The claimant cannot refuse, in a material particular, to comply with the statute and still have the advantage of the presumptions which compliance would create.

We are not prepared to hold, therefore, that the taxpayer presented to the Commissioner or to The Tax Court computations of margins in such conformity to the requirements of the statutes, and the regulations, as, ipso facto, made out a presumption that it had absorbed the economic burden of the tax.

The claimant, however, undertakes to overcome the contention of the Commissioner in this respect, and the holding of The Tax Court to this effect, by asserting that the Commissioner at no time raised the issue of its failure to include the comparative margins for the omitted months of concerns similarly engaged and circum-

stanced until after the trial, and only then in the brief which he filed before The Tax Court. On the contrary, the Commissioner considered and disposed of the case on its merits, without at any time, either before or during The Tax Court hearing, ever suggesting or pleading that the marginal computations were inadequate or incomplete in any particular, by reason whereof claimant urges that the Commissioner should not be permitted to raise the question for the first time after the conclusion of the hearing in The Tax Court or to oppose the reopening of the case so as to permit it to supply the asserted deficiencies. In substance, it says that since the Commissioner belatedly raised the question, the taxpayer is belatedly entitled to supply the answer. It calls our attention to the claim of Webre Steib, reviewed by this Court in 140 F.2d 768, and by the Supreme Court in 324 U.S. 164, 65 S.Ct. 578, 89 L.Ed. 819, wherein the claimant there submitted marginal data only for the months of the base period in which it was engaged in the processing of sugar. Nevertheless, such claimant was permitted, by The Tax Court and by the Supreme Court, to recover a portion of its claim. Likewise it cites our case of Commissioner v. South Coast Corporation, 5 Cir., 162 F.2d 589, between this same Petitioner and the Commissioner involving unjust enrichment taxes arising out of the same processing business and during the same periods involved here. In the light of these circumstances, the Petitioner says that it had all good reason to assume that such data was not deemed essential under the law or by the Commissioner, and, at least, that if the Commissioner had intended to make such demands, he should have made them seasonably and should now be deemed to be in no position to object to allowing Petitioner now to furnish this information.

We consider these contentions of the claimant to be the equivalent of saying that the Commissioner waived strict compliance with the statute in the matter of the failure to include marginal computations for the entire base period or, in lieu thereof, to include comparative computations of other concerns similarly circumstanced.

As stated heretofore, Congress had the right to prescribe by statute, and the regulation thereunder, that the claim shall be set forth in detail and under oath, and that each ground upon which refund is claimed must be set out, and that a failure of the claimant to prepare a true and complete claim and to substantiate, by clear and convincing evidence, all the facts necessary to establish his claim to the satisfaction of the Commissioner will result in disallowance. In obedience to the provisions of this statute and the regulations thereunder, this Court, in Jaubert Bros., Inc. v. United States, supra, said [141 F.2d 207]: "* * * The submission to the Commissioner of a complete claim, substantiated by all facts relied upon, is made a condition precedent to a favorable consideration of the claim. Unless and until such a proper claim is filed with the Commissioner and is acted upon by him, the district court is powerless to hear any evidence not presented with the claim, and cannot award to the claimant any refund."

This holding was in harmony with similar holdings in: Angelus Milling Company v. Commissioner, 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619; Samara v. United States, 2 Cir., 129 F.2d 594; 18th Street Leader Stores, Inc., v. United States, 7 Cir., 142 F.2d 113; Louis F. Hall & Co., Inc., v. United States, 2 Cir., 148 F.2d 274; Vica Co. v. Commissioner, 9 Cir., 159 F.2d 148; Cherokee Textile Mills v. Commissioner, 6 Cir., 160 F.2d 685. These cases are cited in the brief of the Government and many others could be added to the list. It appears, therefore, that the decision of this Court in the Jaubert case, supra, accords with the great weight of authority to the effect that the facts relied upon by the claimant to secure a refund must be set out and presented first to the Commissioner. We adhere to the rule expressed in the Jaubert case, but we agree that it is not an inflexible and copper-riveted rule but is one that should be reasonably construed and applied in order not to "smack(s) too

much of the strangling niceties of common law pleading"[6] whereby to prevent any curative amendment in all circumstances. For instance, the addition of an omitted fact, circumstance, or contention which, under the strict rules of common law pleading, would not have constituted a departure, should not, in our opinion, be sufficient to call the rule into effect. On the other hand, a complete failure, on the part of the claimant, to present to the Commissioner a claim upon which relief could be granted, or a claim such as would afford to the Commissioner no reasonable basis upon which to proceed to an adjudication, certainly should, like a wholly inadequate complaint, be dismissed for failure to state a claim upon which relief could be granted.

It is noteworthy that in the cases cited above and in the brief of Commissioner in support of the rule only cases were involved wherein the claimants had been advised by the Commissioner by letter, or by motions in The Tax Court to dismiss, that the claim as presented to the Commissioner was wholly insufficient upon which to predicate a refund. In Samara v. United States, supra, which seems to be a leading case, there was nothing filed with the Commissioner upon which he could have adjudged whether or not a refund should be granted or rejected. The same is true in our Jaubert Bros. case. There the claimant disregarded numerous letters from the Commissioner calling upon him to furnish further information. It seems that in none of the cases cited by the Commissioner, other than the Vica Company case, supra, is there a holding that the Commissioner could not waive strict compliance with the statute in this particular. We believe that the weight of the authority is contrary to the Vica case, and that the Commissioner can waive strict compliance with the statute, particularly in those cases where a sufficiently reasonable compliance has been made with the statute and the regulations such as would enable the Commissioner to pass upon the merits of the claim.

In Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 46, 72 L.Ed. 253, the Court, speaking through Mr. Justice Stone, held that: "* * * The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial. Failure to observe them does not necessarily preclude recovery. If compliance is insisted upon, dismissal of the suit may be followed by a new claim for refund and another suit within the period of limitations. If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously he was not here, it may be more convenient for the government and decidedly in the interest of an orderly administrative procedure that the claim should be disposed of upon its merits on a first trial without imposing upon government and taxpayer the necessity of further legal proceedings. We can perceive no valid reason why the requirements of the regulations may not be waived for that purpose."

In Angelus Milling Company v. Commissioner, supra, Mr. Justice Frankfurter, speaking for the Court, in discussing the holding in United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619, said:

"Treasury Regulations are calculated to avoid dilatory, careless, and wasteful fiscal administration by barring incomplete or confusing claims. (Citing cases.) But Congress has given the Treasury this rule-making power for self-protection and not for self-imprisonment. If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it. Even tax administration does not as a matter of principle preclude considerations of fairness.

6. Mr. Justice Frankfurter, in Angelus Milling Co. v. Commissioner, supra [325 U.S. 293, 65 S.Ct. 1164].

"* * * The showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him." [325 U.S. 293, 65 S.Ct. 1164]

In United States v. Humble Oil & Refining Co., 5 Cir., 69 F.2d 214, 217, we said: "* * * Though the claim for refund filed by the appellee properly may be regarded as failing to comply with the requirement of the regulation that 'all facts relied upon in support of the claim * * * be clearly set forth in detail under oath,' it was open to the Commissioner to waive compliance with that regulation, to dispose of the claim on its merits, and in doing so to consider any fact having a bearing on the question whether the taxpayer is or is not entitled to a refund. Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 71, 53 S.Ct. 278, 77 L.Ed. 619; Snead v. Elmore, 5 Cir., 59 F.2d 312. It plainly appears that the Commissioner of Internal Revenue considered on its merits the question of overpayment by the appellee on its 1918 income and profits taxes, * * *"

In United States v. Felt & Tarrant Manufacturing Co., 283 U.S. 269, 51 S.Ct. 376, 378, 75 L.Ed. 1025, the Court said, in reference to a claim for refund of taxes: "Compliance may be dispensed with by waiver, as an administrative act, Tucker v. Alexander, supra; but it is not within the judicial province to read out of the statute the requirement of its words". See also: National Commercial Title & Mortgage Guaranty Co. v. Duffy, 3 Cir., 132 F.2d 86, 146 A.L.R. 448; Cleveland v. Higgins, 2 Cir., 148 F.2d 722; certiorari denied, 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428; Beaverdale Memorial Park v. United States, D.C., 47 F.Supp. 663; Toilet Products v. Higgins, D.C., 52 F.Supp. 290; Bethlehem Baking Co. v. United States, D.C., 40 F. Supp. 936, affirmed, 3 Cir., 129 F.2d 490.

 There are circumstances in this case that indicate a waiver by the Commissioner. It is noted: (a) that he passed upon and considered the merits of the claim and denied it; (b) that he did not reject it because of failure of the claimant to comply strictly with the statute in reference to the marginal computations; (c) that he at no time suggested that additional data be submitted; (d) that in his pleading in The Tax Court he made no reference to any defects in the claim or as to the omission in the claim submitted to him of things now claimed by him to be essential; and (e) that he made no motion to dismiss the case in The Tax Court as was generally done in the cases cited by the Commissioner. There was a substantial and reasonable effort on the part of the claimant to comply with the statute as it had been applied in the Webre Steib Company claim and in its own computations in the unjust enrichment tax case against it. Not only was the deficiency of the claim not pleaded in The Tax Court, but no mention was made of such deficiency until the brief was filed in The Tax Court after the case was over. Under these circumstances we are of the opinion that there was such a waiver by the Commissioner as to have persuaded The Tax Court that it ought not completely to cast out the margin evidence without allowing claimant a reasonable opportunity, after the question was raised, to amend such margin evidence so as to conform to the statutory requirements.

 We think, moreover, that evidence offered in rebuttal of the evidence of the Commissioner or in rebuttal of things developed by the Commissioner during the hearing before The Tax Court was not within the purview of provisions of the statute or the regulations which have been construed to deny the reception of evidence not presented to the Commissioner. The statute expressly authorizes either the Commissioner or the claimant to present rebuttal evidence. Thus the testimony of Dr. Coulter as to the effect of the establishment of the quota system under the Jones-Costigan Act was not inadmissible on the ground that these contentions were never presented to the Commissioner prior to the disallowance of the claim. This was clearly rebuttal evidence and such evidence, being au-

thorized by the statute, should not be held to have been within the proscription of Section 903 and Article 202 of Treasury Regulation 96 as construed in the Jaubert case.

We shall not undertake to catalogue the evidence that should or should not have been received and considered. We do not wish to be understood as holding that only the identical evidence presented to the Commissioner can be presented to The Tax Court or that evidence cumulative to, or corroborative of, that submitted to the Commissioner could not be received. We content ourselves with saying that if the claim as submitted to the Commissioner wholly failed to present a justiciable issue upon which the Commissioner could act, no justiciable issue, upon seasonable objection, could be presented thereon for The Tax Court to review, nor should any amendment be allowed in The Tax Court, which, by analogy, would constitute the equivalent of a departure in pleading were the issue one to be measured by the standards of the common law.

We feel that this case should be reopened by The Tax Court and that the motion of the claimant to be permitted to amend its margin computations by including comparative data from representative concerns similarly situated and circumstanced should be granted and on further hearing all competent and relevant rebuttal evidence, whether by the Commissioner or by the claimant, should be entertained.

The judgment of The Tax Court is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

HUTCHESON, Chief Judge. (concurring specially).

While I concur in the result and with most of what is said in the main opinion, I desire to briefly note one point of difference between us. This is that petitioner having been in business for the whole of the base period fixed in the statute, I think that, without regard to waiver, the claim it filed with the commissioner was adequate to entitle it to a hearing.[1] The decisions cited as supporting the opposite view are all fact cases quite different from those here.

This difference between us is certainly not substantial as regards the result to the taxpayer. For, while I think that his claim was adequate in itself, independent of waiver, to permit him to fully present his claim on the merits to the court, I certainly agree fully with the majority that if it was inadequate, in any respect, this inadequacy was waived.

---

1. Webre Steib Co. v. Comm., 324 U.S. 164, 65 S.Ct. 578, 89 L.Ed. 819.