## DEECY PRODUCTS CO. v. WELCH, Former Collector of Internal Revenue.
### No. 3683.

Circuit Court of Appeals, First Circuit.
Dec. 19, 1941.

Samuel S. Dennis, 3rd, of Boston, Mass. (Edward J. Keelan, Jr., and Hale & Dorr, all of Boston, Mass., on the brief), for appellant.

Lyle M. Turner, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., and Edmund J. Brandon and George F. Garrity, both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

The plaintiff brought this action to recover taxes for the year 1936 alleged to have been illegally assessed and collected by the defendant under Title IX, § 901 et seq. of the Social Security Act of 1935, 49 Stat. 639, 642, 42 U.S.C.A. § 1101 et seq. It denied that it was "an employer" under Section 907. However, the district judge held that the plaintiff was "an employer" subject to the Act and entered judgment for the defendant. The plaintiff has appealed.

The parties stipulated that the plaintiff, a Massachusetts corporation, during the calendar year 1936 had at least seven individuals in its employ within the meaning of the Act, and that an eighth person, Grafton L. Wilson, was the statutory clerk of the corporation during the entire period. There is no dispute with respect to the district judge's findings that the clerk kept the minutes of such meetings as were called during the year, and made no charge for his services as clerk, these being incidental to his duties as attorney for the corporation. These were the only specific findings made by the district judge, but there was evidence presented establishing the following unquestioned facts:

Grafton L. Wilson did the necessary legal work involved in the organization of the plaintiff corporation in 1923 and has been its attorney ever since. He was elected statutory clerk[1] at the time of the organization of the company and held that office until 1937. As clerk he prepared the records of meetings and signed them. He testified: "Some years they haven't had the annual meeting, but most years there has been the annual meeting of stockholders followed by the annual meeting of directors, and that has been all. I have been a director, also a small stock holder, and I have attended both the stockholders and directors meetings, prepared the minutes and signed them. * * * I recall what duties I actually performed during the year 1936. On May 16, we had the annual meeting of stockholders and directors which required a little over half an hour, and on May 17, I spent five minutes in dictating the minutes. That is all. That half hour and five minutes constituted my total duties and services as clerk during the calendar year 1936. * * * I was the only one familiar with the legal procedure involved." Act 5 of the by-laws of the corporation provides: "The clerk shall be sworn each year to the faithful discharge of his duties and a record of the oath and the evidence thereof shall be made by him upon the records of the corporation. He shall attend the meetings of the stockholders and of the directors, and shall record upon the book of records of the corporation the proceedings of the stockholders and of the board of directors at their respective meetings. He shall notify the stockholders and directors of their respective meetings in accordance with the by-laws of the corporation, and shall perform such other duties as the directors shall from time to time prescribe. In the absence of the clerk, the shareholders or directors, as the case may be, shall elect a clerk pro tempore, who shall likewise be sworn and his oath recorded."

The pertinent sections of the statute are as follows:

"Section 901. [§ 1101.] On and after January 1, 1936, every employer (as defined in section 907 [1107 of this chapter]) shall pay for each calendar year an excise tax, with respect to having individuals in his employ, equal to the following percentages of the total wages (as defined in section 907 [1107 of this chapter]) payable by him (regardless of the time of payment) with respect to employment (as defined in section 907 [1107 of this chapter]) during such calendar year * * *."

---

[1] General Laws of Massachusetts (Ter. Ed.1932) c. 156, §§ 21, 22, 24, requires all corporations organized thereunder to have a clerk, who must be a resident of the Commonwealth, must be sworn, and must discharge certain statutory duties.

"Section 907. [§ 1107.] * * *

"(a) The term 'employer' does not include any person unless on each of some twenty days during the taxable year, each day being in a different calendar week, the total number of individuals who were in his employ for some portion of the day (whether or not at the same moment of time) was eight or more.

"(b) The term 'wages' means all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash.

"(c) The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer * * *."

"Section 1101 [§ 1301.] (a) When used in this Act [chapter]—* * *

"(6) The term 'employee' includes an officer of a corporation." 42 U.S.C.A. §§ 1101, 1107 (a–c), 1301 (a) (6).

The issue is whether the plaintiff is an employer under Sections 901 and 907. This involves the question whether the clerk is an individual in the employ of the plaintiff within the meaning of Section 907(a). The parties have used the expression "individuals who were in his employ" as synonymous with "employees". Doubtless Congress intended the terms to be used interchangeably.

The government contends that the clerk is an employee and an individual in the employ of the plaintiff, urging that Section 1101(a) (6) is decisive of the case. It argues both in this case and in United States v. Griswold, 1 Cir., 124 F.2d 599, decided by us this day, that as a result of this section every officer of a corporation *must* be an employee even though he performs no services, receives no compensation and is subject to no control. It says in the first place that Congress clearly intended a person to be an employee within the meaning of the Act if he met the tests of the ordinary employment relationship. Since such a person was already covered by the Act, Section 1101(a) (6) was unnecessary if it meant merely that an officer was to be considered an employee if he met the ordinary employment relationship tests, and for that reason Congress must have meant something more than this. It contends that it meant that all corporate officers are to be considered employees whether they meet the tests of the ordinary employment relationship or not.

Secondly, it says that it was the purpose of Congress in the enactment of this section to set at rest, so far as the Social Security Act of 1935 was concerned, a dispute which had given rise to endless litigation under various state laws with respect to the status of corporate officers as employees. It contends that the determination of the issue whether a corporate officer was an employee within the meaning of the various state statutes providing for workmen's compensation, freedom of employees' wages from attachment by creditors, and the granting of a preferred creditor status to employees who had claims for wages, turned not on the question whether the acts were intended to benefit white-collar, high salaried executives but on the question whether corporate officers could be considered employees at all if tested by such characteristics as the rendering of services and subjection to control. It maintains that the courts in the various states for the most part determined the meaning of employee in the light of the decisions involving master and servant, principal and agent, and respondeat superior; and then were about equally divided in determining whether a corporate officer met the more or less established tests. It says it was this dispute that Congress had in mind in passing Section 1101(a) (6) and that Congress, therefore, must have meant that a corporate officer was to be considered an employee, whether or not he was an employee in the sense that he met such tests as rendering services, receipt of compensation, and subjection to control. As a final argument the government points to the administrative construction in Treasury Regulations 90, Article 205, which provides: "An officer of a corporation is an employee of the corporation" and it cites Brewster v. Gage, 1930, 280 U.S. 327, 336, 50 S.Ct. 115, 117, 74 L.Ed. 457, which says:

"It is the settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons."

We cannot accept the government's construction. We believe with the taxpayer that Section 1101(a) (6) means that an officer *can* be an employee. In other

words, if he meets the tests determinative of the ordinary employment relationship he is an employee and the fact that he is also an officer of the corporation does not destroy his status as an employee under the Act.

There is a definite reason why Congress should have enacted Section 1101(a) (6) even though it is taken to mean that a corporate officer *can* be an employee. In enacting this section it is far more likely that Congress was directing its attention to the very real dispute whether a corporate officer was the type of person intended to be protected by remedial state acts rather than any dispute about corporate officers meeting the ordinary employment relationship tests. The fact is that there was a great dispute in the state courts on the question whether a corporate officer was the type of person intended to be covered by the statutes and there was no such dispute on the question whether corporate officers met the ordinary employment relationship tests. In the absence of Section 1101(a) (6) it could have been argued that, granting the ordinary employment relationship existed with respect to corporate officers, still these superior employees were not intended to be covered by the Act. For that reason Congress might well have felt the necessity of inserting such a section as Section 1101(a) (6) in the Act so that it would be clear that the Act covered superior employees as well as inferior employees.

That the dispute in the state courts turned on the type of person intended to be covered by the statutes rather than on the existence of the ordinary employment relationship is completely borne out by the very cases which the government cites in support of its position.

Bowne v. S. W. Bowne Co., 1917, 221 N.Y. 28, 116 N.E. 364 held that a corporate officer was not an employee within the Workmen's Compensation Act, not because he did not meet the ordinary employment relationship tests, but because he was not the type of person intended to be protected by the act in view of its purpose and policy.

Helsabeck v. Vass, 1929, 196 N.C. 603, 146 S.E. 576, 578 also held that a corporate officer was not the type of person intended to be protected by a statute giving a preferred position to claimants against a corporation "for labor and cleri-cal services performed", because corporate officers had knowledge of the financial condition of the corporation and hence did not need the protection afforded by the statute.

Alexander v. Farrow, 1909, 151 N.C. 320, 66 S.E. 209 held that corporate officers were not "laborers" or "workmen" under a similar statute, but while the exact ground of the holding is not clear, it is more likely that the court was resting its decision on the policy of the statute rather than on the failure of corporate officers to meet the tests of the ordinary employment relationship.

In Carville v. A. F. Bornot & Co., 1927, 288 Pa. 104, 135 A. 652, 655, the Workmen's Compensation Act, 77 P.S.Pa. §§ 21, 22, provided that "employer" means "master" and "employee" means "servant". And yet even there the court held that a corporate officer was not an employee, not on the ground that he failed to meet the characteristics of a servant, but on the ground that the purpose of the act was to protect "the great army of business and industrial wage-earners, and not to benefit salaried executive officers of corporations".

South & North Alabama Railroad Co. v. Falkner, 1873, 49 Ala. 115, held that a corporate officer was not an employee within the meaning of a statute which provided "that hereafter the wages of laborers and employees shall not be subject to garnishment or attachment", on the ground that it was the purpose of the statute to protect those in "a subordinate occupation which is not very remunerative".

Shriver v. Carlin & Fulton Co., 1928, 155 Md. 51, 141 A. 434, 58 A.L.R. 767 did not turn on the question whether a corporate officer met the ordinary employment relationship tests. It merely held that one who performed work apart from that called for by his position as a corporate officer was not to be denied the protection of a statute forbidding the attachment of wages, with respect to wages earned apart from his work as a corporate officer.

There were similar holdings in Stevens v. Industrial Commission, 1931, 346 Ill. 495, 179 N.E. 102, 81 A.L.R. 638; Skouitchi v. Chic Cloak & Suit Co., 1920, 230 N.Y. 296, 130 N.E. 299, 15 A.L.R. 1285, and Southern Surety Co. v. Childers, 1922, 87 Okl. 261, 209 P. 927, 25 A.L.R. 373 under workmen's compensation acts.

When the hearings on the Economic Security Act,[2] which became the Social Security Act of 1935, were held by the Senate Finance Committee, Elmer F. Andrews, New York State Industrial Commissioner, appeared before the Committee and told it that he and the group he represented thought that the bill should exclude high-salaried, white-collar workers. Senator Connally disagreed, saying that he thought the act should cover "the president" of a corporation as well as "the doorkeeper". Here the attention of the Committee was focused on the problem whether the act should cover superior employees, not on any problem whether corporate officers met the ordinary employment relationship tests.

■ It was to this distinction that Congress directed its attention when it provided in Section 13 of the Fair Labor Standards Act of 1938 (52 Stat. 1060, 29 U.S.C.A. § 201 et seq.) that exempted employees should include "any employee employed in a bona fide executive, administrative * * * capacity". Although this act was passed three years after the Social Security Act of 1935, it is some evidence that in recent legislation Congress has been concerning itself with the distinction between classes of employees. It is also some indication that Congress must have thought that executives were employees in the sense that they met the ordinary employment relationship tests, for if they were not considered employees there was no need to exempt them. We therefore hold that Congress meant to make it clear that all who meet the ordinary employment relationship tests are to be covered by the Act whether they are superior or inferior employees, and that those who do not meet these tests are not to be covered by the Act. This congressional purpose will be accomplished by giving to Section 1101 (a) (6) the construction which the taxpayer urges. In so holding we are not unmindful of the government's argument that the very existence of this case together with United States v. Griswold, and the difficulty of defining the legal relationship of employer and employee with precision reveal a problem giving rise to litigation.

We feel that our conclusion is fortified by the administrative construction of the Act. Regulations 90, Article 205 provides:

"Employed Individuals—An individual is in the employ of another within the meaning of the Act if he performs services in an employment as defined in section 907(c). However, the relationship between the individual who performs such services and the person for whom such services are rendered must, as to those services, be the legal relationship of employer and employee. The Act makes no distinction between classes or grades of employees. Thus, superintendents, managers, and other superior employees are employees within the meaning of the Act.

"The words, 'employ,' 'employer,' and 'employee,' as used in this article, are to be taken in their ordinary meaning. * * *

"Whether the relationship of employer and employee exists, will in doubtful cases be determined upon an examination of the particular facts of each case.

"Generally the relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to *what* shall be done but *how* it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor, not an employee. * * *

"The measurement, method, or designation of compensation is also immaterial, if the relationship of employer and employee in fact exists.

"Individuals performing services as independent contractors are not employees. * * *

---

[2] Hearings before Senate Committee on Finance on S. 1130, 74 Cong., 1st Sess. (1934) 719.

"An officer of a corporation is an employee of the corporation, but a director, as such, is not. A director may be an employee of the corporation, however, if he performs services for the corporation other than those required by attendance at and participation in meetings of the board of directors."

The following ruling Mim. 4880, 1939-1 Cum.Bull. 312 has also been issued:

"It has been concluded after further consideration of the matter that an honorary officer of a corporation may not, in any real sense, be regarded as an officer within the contemplation of Section 1101 (a) (6) of the Act. In determining whether this conclusion applies in any particular instance, however, it is necessary first to decide whether the individual involved is in fact an 'honorary' officer. While this decision must in turn rest upon a consideration of the facts in each specific case with respect to which the question arises, in general it will be considered that an officer of a corporation is an 'honorary' officer within the meaning of the foregoing rule if (1) he is specifically designated an honorary officer; (2) such designation is solely to do him honor or to have him included in the organization because of his name, prominence, or standing in the community; (3) it would not ordinarily be necessary to fill his office should he die or resign; (4) as such officer he does not actually perform any service and is not required or expected to perform any, and (5) as such officer, he does not receive, and is not entitled to receive, remuneration."

We think the regulations and the ruling form a consistent pattern supporting our conclusion that Section 1101(a) (6) means that if one meets the ordinary employment relationship tests, the fact that he is a corporate officer, does not prevent him from being an employee within the meaning of the Act. Emphasis is placed on "the legal relationship of employer and employee"; no distinction is to be made between classes of employees; and the words "employ," "employer," and "employee" are to be taken in their ordinary meaning. It seems clear that the question whether a person is an employee in all cases turns on the existence of the more or less established concept of the "legal relationship of employer and employee". The ruling is consistent with our interpretation of the regulations, for it holds that an honorary officer is not an employee despite Section

1101(a) (6) since such a person performs no services, receives no compensation and is subject to no control. Thus, he does not fulfill the requisites of the "legal relationship of employer and employee". Hence he is not an employee and Section 1101(a) (6) does not make him one. The regulation providing that "an officer of a corporation is an employee" is not helpful for it is as ambiguous as Section 1101(a) (6) itself. The government, however, challenges this interpretation of the regulations and the ruling, urging that no part of Article 205 applies to the case of corporate officers, except the phrase "an officer of a corporation is an employee" and that phrase clearly means that an officer must be an employee whether the legal relationship of employer and employee exists or not. It distinguishes the ruling from the case at bar on the ground that an honorary officer is not an officer, but that the clerk is an officer, and adds that if the ruling conflicts with the regulation the ruling must yield. This position does not seem to be persuasive. A reading of the regulation on "employed individuals" does not warrant the conclusion that it is not to be applied to all cases uniformly. Certainly the regulation does not say so. Nor is it abundantly clear that the phrase "an officer of a corporation is an employee" means that he is an employee even though "the legal relationship of employer and employee" does not exist. Again, we are not impressed with the manner in which the ruling is distinguished. When the government argues for its construction of Section 1101(a) (6) it assumes for the sake of this argument that the clerk performs no services, receives no compensation, and is subject to no control. On this assumption, however, the clerk would fall within the category of an honorary officer under the ruling, and thus would not be an employee according to the ruling. But the government says that if the ruling conflicts with the regulation, the ruling must yield. We do not feel that the ruling conflicts with the regulation. At any rate, making every possible concession to the government, the most that can be said is that the regulations are ambiguous. If that is the case we must fall back on the purpose for the inclusion of Section 1101(a) (6), and that supports the taxpayer's construction.

What would be the result of the acceptance of the government's construc-

tion? It would mean that one who performs no services, receives no compensation, and was subject to no control, could be held to be an employee. Evidently, the test would be the allowing the use of one's name as a corporate officer. While Congress probably could classify such a person as an employee on that ground, still we do not feel that this was the intention of Congress in passing the Social Security Act of 1935. It is our opinion that Congress intended to impose the tax where the more or less established "legal relationship of employer and employee" existed. While Steward Machine Co. v. Davis, 1937, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293 is not decisive of this issue, it is clear that the Supreme Court had no thought that any part of the Act imposed a tax on allowing one's name to be used as a corporate officer. Moreover, the acceptance of the government's construction would necessitate our declaring the ruling on honorary officers erroneous.

■ We hold that an employee is one who meets the tests of the more or less established concept of "the legal relationship of employer and employee", Texas Co. v. Higgins, 2 Cir., 1941, 118 F.2d 636, 637, and that one who does not meet those tests is not an employee within the meaning of the act, even though he may bear the title of corporate officer.

There remains the further question whether the statutory clerk meets the tests of the ordinary legal relationship of employer and employee. We do not intend to lay down any precise definition of such relationship. It does not follow, however, that the case is impossible of solution because precision of definition is lacking. The boundaries limiting the relationship appear with sufficient clarity to permit us to make the distinctions previously drawn in this opinion and also to determine the status of the clerk.

The facts are not disputed. The clerk performed services for the corporation. That they required only thirty-five minutes of his time in the year 1936 does not make it any less a rendering of services. It is obvious that he was clerk during the entire year, and if the directors or the shareholders saw fit to meet more often, his work might have assumed greater proportions. In addition, his serving as clerk was a necessary incident of the conduct of the business of the corporation, since it was a Massachusetts one.[3] Nor can it be said that his serving as clerk was a gratuitous undertaking. The district judge found that these services were incidental to his work as attorney for the corporation, in which capacity he was paid. While he may not have received any identifiable compensation as clerk, he did not serve without consideration. It is hard to think that he would have acted as clerk if he had not been attorney for the corporation. Indeed, the plaintiff says in its brief: "One does not ordinarily perform services as an employee without receiving pay therefor", and Restatement, Agency (1933) § 441(d) says:

"A person may act for compensation and not gratuitously although he receives no money or other thing for his services, as where one learning a trade or profession renders services in consideration of the opportunity afforded him to gain skill. Likewise, the services of an agent whose compensation is contingent upon a condition which does not occur, are not given gratuitously. In both cases, the one acting has the duties of a paid agent."

■ In addition, we feel that Congress does not intend a person to be considered an employee within the meaning of the Act unless he is subject to some sort of control and supervision. No general rule can be stated defining the control required to bring one within the scope of the legislative intent. The only thing that can be done is to examine the facts of each case and then determine whether there is present sufficient control and supervision to make one an employee. Here the clerk is subject to the board of directors, and the board can direct him in the performance of the duties of his office. Moreover, "The clerk * * * shall perform such other duties as the directors shall from time to time prescribe". The directors can tell the clerk in what books to keep the minutes and where to keep the record books. It cannot be said that he has no superiors in the corporation who can give him orders. The powers of the board are not nullified by the fact that he is the only one familiar with the legal procedure involved. On this issue of control, the plaintiff cites our decision in Meigs v. United States, 1 Cir., 1940, 115 F.2d 13 and says it is indistin-

---

3 See footnote 1.

guishable from the case at bar. We feel that case is distinguishable on the ground that there the doctor was "not subject to control as to the manner in which he performed the acts that constituted the execution of his agency". Restatement, Agency (1933) § 220(c). Here the clerk is subject to control as to the acts that constitute the execution of his agency. Indeed, if the clerk is not subject to control then it would appear that a stenographer is not subject to control.

We conclude, therefore, that the clerk is an employee and an individual in the employ of the corporation within the meaning of Section 907(a) of the Act, and the plaintiff is an employer within the meaning of Section 901 of the Act.

The judgment of the District Court is affirmed.