## BECKWITH v. UNITED STATES.
### No. 3565.

District Court, D. Massachusetts.

Sept. 17, 1946.

Philip R. White, Ernest G. Angevine, and Hutchins & Wheeler, all of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Philip R. Miller and Andrew D. Sharpe, Sp. Assts. to Atty. Gen., and Douglas W. McGregor, Asst. Atty. Gen., for defendant.

SWEENEY, District Judge.

This is an action to recover the sum of $5,884.30, plus interest thereon, paid by the plaintiff for the years 1938 through 1942, as taxes and interest under Title IX of the Social Security Act and Sections 1600–1611 of the Internal Revenue Code, Federal Unemployment Tax Act, 26 U.S.C.A. Int.Rev. Code, §§ 1600–1611, and for the period January 1, 1938, through June 30, 1943, under Title VIII of the Social Security Act and Sections 1410–1432 of the Internal Revenue Code, Federal Insurance Contributions Act, 26 U.S.C.A. Int.Rev.Code, §§ 1410–1432.

The sole question presented is whether the plaintiff's salesmen were employees within the meaning of the Act. If they were not employees, the plaintiff did not have eight employees in number and would not be subject to Federal Unemployment taxes on payments made to others. If they were not employees, he would not be subject to the Old Age Insurance taxes levied under Title VIII of the Act.

### Findings of Fact

The plaintiff has for many years operated a stationery business, selling merchandise both from stock and as made to order by its suppliers. Except for a few sales which he handles himself, he conducts his business through some 10 outside salesmen. These salesmen are furnished by the plaintiff with desk space, telephone, secretarial services, and all necessary office supplies. He also supplies the salesmen with all the forms, stationery, and business cards which they need. He maintains records of inventories, receivables, and commissions due. He sends out all bills and makes deliveries.

The salesmen pay all expenses of obtaining orders, but orders must be submitted on forms provided by the plaintiff. If the goods ordered are in stock the order is delivered to the plaintiff's shipper and the goods are shipped. If the order is for merchandise which is to be manufactured or printed the salesman orders the paper and the printing or manufacturing, fixing the price which is paid for this work. He also plans the layout or design of the manufactured goods which he sells. Plaintiff accepts orders obtained by the salesmen only if their prices include at least a 10% profit over cost. He could terminate the account of any salesman whose orders are not satisfactorily priced. When salesmen are in doubt as to a proper price, they ask the plaintiff for his approval. The terms of credit at which the salesmen sell are the same and are fixed by the plaintiff.

The salesmen spend several hours on the plaintiff's premises each day attending to orders, mail, telephone calls, examining stock, etc. They also spend considerable time in the office contacting manufacturers and wholesalers by mail, telephone, and sometimes personally, drawing up plans and designs for printing and forms to be manufactured for customers, checking purchases against specifications and invoices, examining proofs of printing orders, and other miscellaneous activities. Sometimes a salesman will not leave the office at all during a day. They have full use of the office facilities and complete access to the stock at all times.

The salesmen's compensation for everything they do is a uniform 60% of the gross profit on their sales. This figure is a result of the plaintiff's general policy and does not represent the outcome of negotiations with each individual salesman. Payment of commissions is made regularly on the 15th of each month. Some salesmen are given weekly drawing accounts of fixed amounts charged against commissions.

None of the salesmen has a telephone listing in his own name as being in the stationery business. Invoices, credit memoranda, and other documents are in the name of the plaintiff. Plaintiff's stationery is used in correspondence and business cards are provided by the plaintiff with the name of the L. W. Beckwith Co. on them and the salesman's name in small print in the lower left corner.

Salesmen are not permitted to sell for their own accounts or to place orders with any competitors of the plaintiff.

There was no limitation on the extent of the territory covered by the salesmen, although as a practical matter they did not go outside of the New England states. The plaintiff had no right to tell his salesmen to call or not to call on particular customers. Where salesmen have terminated their connections with the plaintiff, he has been consulted by other of his salesmen as to whether they could take over the territory. They have no sales quotas to meet, and they have not received any instructions from the plaintiff on the way to get customers.

When accounts are slow or delinquent, the salesmen are furnished with statements of account by the plaintiff and told to call upon the customers and get the money. Failure to obtain payment means that the salesman bears the loss out of his commissions. The plaintiff has told salesmen not to call on certain customers for credit reasons. The plaintiff has made suggestions or given directions with respect to calling on customers to make adjustments or pushing slow items which accumulate in stock. The salesmen consult the plaintiff to obtain his approval in regard to ordering merchandise for stock, purchasing to fill large orders, making unusual purchases or unusual sales.

The salesmen do not have written contracts defining their rights and obligations. Their employment is indefinite, without stated term or duration. Plaintiff retains the right to discharge any of the salesmen at any time for any reason.

█ Section 811(b) of the Social Security Act, 42 U.S.C.A. § 1011(b), 26 U.S.C.A. Internal Revenue Code, § 1426(b), provides that: "The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer * * *." Section 907(c) of the Social Security Act, 42 U.S.C.A. § 1107(c), 26 U.S.C.A. Internal Revenue Code, § 1607(c) contains a similar provision. Whether the employer-employee status ex-

ists in a given case under these provisions will depend upon whether the "employee" meets the tests of the more or less established concept of legal relationship of employer and employee. Deecy Products Co. v. Welch, 1 Cir., 124 F.2d 592, 139 A.L.R. 916; United States v. Griswold, 1 Cir., 124 F.2d 599. Treasury Regulations 90, Article 205, in an administrative construction of· these provisions which has had judicial approval, Deecy Products Co. v. Welch, supra, provides [124 F.2d 596]:

"Employed Individuals—An individual is in the employ of another within the meaning of the Act if he performs services in an employment as defined in section·907(c). However, the relationship between the individual who performs such services and the person for whom such services are rendered must, as to those services, be the legal relationship of employer and employee. * * *

"The words 'employ,' 'employer,' and 'employee,' as used in this article, are to be taken in their ordinary meaning. * * *

"Whether the relationship of employer and employee exists, will in doubtful cases be determined upon an examination of the particular facts of each case.

"Generally the relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will of the employer not only as to *what* shall be done but *how* it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for ac-

complishing the result, he is an independent contractor, not an employee. * * *" Treasury Regulations 91, Article 3, Regulations 106, Section 402.204 and Regulations 107, Section 403.204 are substantially the same.

The Regulations emphasize that it is not *actual* control which is necessary but the *right* to control. The cases have construed this to mean a reasonable measure of direction and control over the method and means of performing the service, or to put it another way, what could the salesmen do in shaping the policy or conducting the business independently of, or in opposition to the wishes of the plaintiff? Jones v. Goodson, 10 Cir., 121 F.2d 176, 179; United States v. Wholesale Oil Co., 10 Cir., 154 F. 2d 745, 748.

I believe on the facts found above that this plaintiff had a reasonable measure of direction and control over the method and means used by the salesmen in performing their services. He has reserved final authority in all pricing .policies, in the making of unusual purchases or sales, or ordering for stock, in handling stock items and delinquent accounts. Whether the result of suggestion or command salesmen are not allowed to call on ·certain customers for credit reasons, or handle other accounts in competition with plaintiff. In short, these salesmen form an integral part of the whole operation of plaintiff's business, and there is little they can do in shaping policy or in carrying on their activities independently of or in opposition to the plaintiff.

It is true that the power to discharge at any time is not in itself enough to make these salesmen employees. McGowan v. Lazeroff, 2 Cir., 148· F.2d 512; Texas Co. v. Higgins, 2 Cir., 118 F.2d 636. However, it is an important factor to consider, and its existence in the instant case made it virtually certain that the plaintiff's policies and preferences would be followed at all times.

Plaintiff also provides a working place for the salesmen, when they are not on the road, for the performance of certain duties such as correspondence,. laying out orders, etc. This is also an important factor under the Regulations.

There remains for consideration plaintiff's argument that the defeat of a proposed amendment of the Social Security Act in 1939, which would have broadened the coverage of the Act to include salesmen who were not employees, indicates an intent by Congress that salesmen of this type are not to be included. I cannot agree with this view. This proposed amendment was intended to broaden the coverage of the Act to include salesmen who were not employees. As I have indicated, I believe that the salesmen in the instant case meet the requirements of the employer-employee relationship as set forth in the Regulations.

### Conclusions of Law

In the light of the foregoing I conclude and rule that these salesmen are employees within the meaning of Section 811(b) and Section 907(c) of the Social Security Act. The complaint is therefore ordered dismissed.