**FORT DODGE BY-PRODUCTS, a
Corporation, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

Civ. No. 634.

United States District Court
N. D. Iowa, Central Division.

Aug. 5, 1955.

John J. Murray, Fort Dodge, Iowa,
for plaintiff.

Ruppert Bingham, Spe. Asst. to the
Atty. Gen. of the U. S., Richard W.
Beebe, Asst. U. S. Dist. Atty., Sioux
City, Iowa, for defendant.

GRAVEN, District Judge.

This is an action brought by the plaintiff under the provisions of Section 1346 (a) (1), 28 U.S.C.A., to recover internal revenue taxes claimed to have been erroneously or illegally collected from it. The plaintiff seeks to recover the sum of $1,014.63 collected from it for the calendar year 1947 under the provisions of the Federal Unemployment Tax Act. Sections 1600 et seq., 26 U.S.C.A. § 1600 et seq., 1939 Internal Revenue Code; Sections 3301 et seq., 1954 Internal Revenue Code, 26 U.S.C.A. The plaintiff also seeks to recover the sum of $3.72 collected from it under the provisions of the Federal Insurance Contributions Act. Sections 1420, 1426–1428, 1432, 26 U.S.C.A.; Sections 1420, 1426–1428, 1432, 1939 Internal Revenue Code; Sections 3121–3125, 1954 Internal Revenue Code, 26 U.S.C.A.

The defendant admitted that the plaintiff had made timely claim for the refund of the taxes herein sought to be recovered and that the claim had been denied. The controversy in this case is as to whether Vrem D. Levens during the period of time here involved was or was not an employee of the corporation within the purview of the Federal Unemployment Tax Act and the Federal Insurance Contributions Act.

The plaintiff was organized as a corporation under the laws of the State of Iowa on October 3, 1946. Its place of business is at Fort Dodge, Iowa, where it operates its only plant. It is engaged in the processing of by-products of the meat packing industry. It is not engaged in any other business. Its business predecessor was a limited partnership which was formed on March 19, 1945. The general partners in that partnership were C. M. Bodensteiner and Vrem D. Levens. The partnership agreement provided that the business of the partnership was to be managed entirely by the general partners. Vrem D. Levens contributed approximately 45 per cent of the invested capital of the partnership. The plaintiff corporation was organized for the purpose of taking over the business operated by the partnership and did take over that business.

In the articles of incorporation C. M. Bodensteiner was named as president and Vrem D. Levens was named as vice-president. The articles of incorporation provided for the office of secretary. Starting with the year 1947 Joseph Skram held the office of secretary. The articles of incorporation provided for a board of directors of not less than three nor more than five in number. The articles named three as members of the board of directors. C. M. Bodensteiner and Vrem D. Levens were named as members of that board. From the time of the organization of the corporation and until April 8, 1949, Vrem D. Levens was vice-president of the plaintiff and a member of its board of directors. On April 8, 1949, he disassociated himself from the plaintiff and since that time he has had no connection with the plaintiff nor any interest in it.

There were two classes of stock issued by the corporation. One class consisted of Class A Common Voting Stock and the other class consisted of Class B Common Nonvoting Stock. Forty shares of Class A Common Voting Stock were issued. During the period Mr. Levens was connected with the corporation, he and Mr. Bodensteiner each owned twenty shares of that stock. During that same period Mr. Levens also owned a substantial amount of Class B Common Nonvoting Stock.

Mr. Bodensteiner had been in the employ of large meat packers for approximately 14 years preceding the formation of the limited partnership. His employment immediately preceding the formation of the partnership was at Fort Dodge, Iowa. His home was and is at that place. At the time of the formation of the partnership Mr. Levens resided at Minneapolis, Minnesota. He was engaged in the operation of a business at that place similar to that contemplated by the partnership. During the period of time here material he resided at

Minneapolis and owned and operated that business there. He now resides at Kansas City, Missouri, and is engaged in a similar business there. It appears that prior to and during his connection with the plaintiff Mr. Levens was experienced in the field in which the plaintiff operated and that he was a man of substantial capital and income. At all times since the plaintiff was organized Mr. Bodensteiner has been its president and in active charge of its plant at Fort Dodge, Iowa.

During the period Mr. Levens was connected with the plaintiff he came to Fort Dodge eight to twelve times a year for a one or two day stay. He spent such days going over the affairs of the corporation with Mr. Bodensteiner. On some of these occasions he came directly to Fort Dodge from Minneapolis and returned directly from Fort Dodge to Minneapolis. On other occasions he stopped at Fort Dodge during a trip on which he attended to matters not connected with the business of the plaintiff.

The articles of incorporation provided for the enactment of by-laws by the board of directors. The board of directors enacted by-laws at or immediately following the incorporation of the plaintiff, which have been in effect since their enactment. Sections 1, 2, 3, and 4 of Article III of those by-laws provide as follows:

"1. The officers of this Company shall consist of a President, a Vice-President, Secretary and a Treasurer, who shall be elected by the Board of Directors at the regular meeting of said Board held immediately following the annual meeting of Stockholders. The officers so elected shall hold office for the term of one year and until their successors are elected and qualified.

"2. The salaries of the officers shall be fixed by the Board of Directors and may be changed from time to time by a majority vote of the Board.

"3. The President shall preside at all of the meetings of the Stockholders and of the Board of Directors. He shall be the chief executive officer of the Company and shall have general charge of and control over the affairs and business of the corporation subject to the Board of Directors. He shall execute all deeds, leases, conveyances, agreements and contracts authorized by the Board of Directors. He shall perform such additional duties as may be prescribed from time to time by the Board of Directors or by the by-laws of the Company.

"4. The Vice-President shall perform and discharge the duties of the President in his absence for any cause whatever and such other duties as may be assigned to him by the Board of Directors."

Starting with the formation of the corporation on October 3, 1946, it commenced making monthly payments to Vrem D. Levens. The monthly payments were in the sum of $30 from October, 1946, through the month of November, 1947. Starting with the month of December, 1947, and continuing until Vrem D. Levens disassociated himself from the corporation in April, 1949, the monthly payments were in the sum of $42.42.

In December, 1946, the plaintiff made arrangements for life insurance for its employees. In connection therewith it submitted a number of documents to the insurance carrier. One of such documents was entitled "Preliminary Information from Employer for Employee Life Insurance." In it the president and vice-president of the plaintiff were listed as being employees of it. That document was signed by Mr. Bodensteiner. Another of such documents was entitled "Employee Life Insurance Proposal-Initial Coverage." In that document Mr. Bodensteiner and Mr. Levens were listed as employees of the plaintiff. The date of the commencement of their employment was given as June, 1945. The insurance carrier issued insurance

policies to those listed as employees, including Mr. Levens. The premiums on the policies, including the policy issued to Mr. Levens, were paid by the plaintiff.

The plaintiff's fiscal year was from October 1st to September 30th. Its federal income tax returns were made in accord with its fiscal year. Its federal income tax returns for the fiscal years ending September 30, 1947, and September 30, 1948, were signed by Mr. Bodensteiner. In those reports he was listed as president and Mr. Levens as vice-president of the corporation. The monthly payments made by the corporation to Mr. Levens during the periods covered were reported in both returns in the Schedule entitled "Compensation of Officers." In the same Schedule it was reported that Mr. Levens devoted 5 per cent of his time to the business of the corporation. In each return the monthly payments made by the corporation to Mr. Levens were taken as deductions from its taxable income. In each return the life insurance premiums paid by the plaintiff under the insurance plan referred to, including the premium paid on the policy issued to Mr. Levens, were taken as deductions from its taxable income. The monthly payments made to Mr. Levens were reported as taxable wages in the quarterly reports made by the corporation under the Federal Unemployment Tax Act and the Federal Insurance Contributions Act. The corporation did not withhold any sum from the monthly payments under the Current Tax Payments Act of 1943, 57 Stat. 126, 26 U.S.C.A. Int.Rev. Acts, page 385.

The corporation's federal income tax returns and the quarterly reports referred to were prepared by Joseph Skram, the secretary of the corporation. He also kept the books of the corporation. Mr. Bodensteiner testified that at the time he signed the federal income tax returns referred to he did not know that the corporation was taking deductions from its taxable income for the payments made to Mr. Levens and that he did not know that the corporation was taking deductions for the premiums paid by the corporation on the life insurance policy issued to Mr. Levens. He further testified that he did not know that Mr. Levens was listed as an employee of the corporation in the quarterly reports reporting wages taxable under the Federal Unemployment Tax Act and the Federal Insurance Contributions Act.

The plaintiff paid the sum of $1,014.63 as taxes under the Federal Unemployment Tax Act for the calendar year 1947. For the same year it paid the sum of $3.72 as taxes under the Federal Insurance Contributions Act in behalf of Mr. Levens. It is not controverted that the plaintiff during the year 1947 had in its regular employ, not counting Mr. Levens, a total of seven persons. If the plaintiff establishes that Mr. Levens was not an employee of it within the purview of the Federal Unemployment Tax Act, then it has established that the sum of $1,014.63 paid by it as taxes under that Act was erroneously or illegally collected. If it establishes that Mr. Levens was not an employee of it within the purview of the Federal Insurance Contributions Act, then it has established that the sum of $3.72 paid by it as taxes under that Act was erroneously or illegally collected.

The Federal Unemployment Tax Act, as amended, Section 1607(i), 26 U.S. C.A., defines an employee as follows:

> "*Employee.* The term 'employee' includes an officer of a corporation, but such term does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules."

The Federal Insurance Contributions Act, as amended, Section 1426(d), 26 U.S.C.A., defines an employee as follows:

*"Employee.* The term 'employee' means—

"(1) any officer of a corporation; or

"(2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; * * *."

The definitions in the two Acts are somewhat similar. The courts have tended to follow the same rules and apply the same tests in regard to the inclusion or exclusion of officers of a corporation as employees of a corporation in cases arising under the Federal Unemployment Tax Act as they do in cases arising under the Federal Insurance Contributions Act. In the present case the parties in their arguments have treated the two definitions as being similar in their purview.

The courts in construing the definitions referred to have not been in entire harmony on the question as to whether an officer is, per se, an employee of the corporation. The majority of the courts hold that under those definitions an officer of a corporation is not, per se, an employee of the corporation. United States v. Bernstein, 4 Cir., 1949, 179 F.2d 105; Deecy Products Co. v. Welch, 1 Cir., 1941, 124 F.2d 592; Independent Petroleum Corporation v. Fly, 5 Cir., 1944, 141 F.2d 189, 152 A.L.R. 928; National Wooden Box Ass'n v. United States, 1945, 103 Ct.Cl. 295, 59 F.Supp. 118; Tidwell v. United States, D.C.1945, 63 F.Supp. 609; Lewiston Elevator Co. v. Reynolds, D.C.1946, 63 F.Supp. 975; accord, United States v. Griswold, 1 Cir., 1941, 124 F.2d 599 (trustees of a Massachusetts business trust); Personal Finance Co. of Braddock v. United States, D.C.1949, 86 F.Supp. 779. Contra: Nicholas v. Richlow Mfg. Co., 10 Cir., 1941, 126 F.2d 16; Builders Lumber & Supply Co. v. United States, D.C. 1943, 48 F.Supp. 241; Beaverdale Memorial Park v. United States, D.C.1942, 47 F.Supp. 663.

The Bureau of Internal Revenue has not maintained a consistent position on the question as to whether an officer of a corporation was, per se, an employee of the corporation within the purview of the Federal Unemployment Tax Act and the Federal Insurance Contributions Act. On June 27, 1944, the Bureau issued what is designated as Mimeograph 5723. The Bureau therein stated that it was the position of the Bureau that "officers of corporations * * * who perform no services and receive no compensation are to be counted nevertheless as employees for the purposes of the tax imposed by Title X of the Social Security Act [42 U.S.C.A. § 301 et seq.] and by the Federal Unemployment Tax Act on employees of eight or more." In 1946 the Bureau revoked Mimeograph 5723 by Mimeograph 5967, 1 Cum.Bull. 255. That later Mimeograph provides, in part, as follows:

"11. * * * Officers of a corporation who, as such, perform no services and receive no remuneration in any form, are not to be considered, in their capacity as officers, as employees of the corporation for employment tax purposes. Similarly, officers of a corporation who, as such, perform some services of a minor or nominal nature but without consideration or remuneration in any form and who are not entitled to remuneration, will not be considered as employees of the corporation either because of such services or because of having the status of officers.

"12. In determining whether services actually performed by a corporate officer in that capacity may be considered to be of a minor or nominal nature the character of the services, frequency and duration of their performance, and the actual or potential importance or necessity of the services in relation to the conduct of the corporation's business, are the primary elements to be considered. Thus, occasional signing

of documents or checks, presiding over or attendance at infrequent meetings, and similar isolated and noncontinuous acts having no material bearing or effect on the day-to-day functioning of the corporation in the conduct of its business, will be considered, as a general rule, to be services of a minor or nominal nature.

"13. Where services are performed for which there is consideration, direct or indirect compensation, or entitlement to such compensation, in any form, the employer-employee relationship will be held to exist, as a general rule, unless it is established that the services are in fact of a minor or nominal nature and, in addition, that the consideration or compensation is so inconsequential and of such a character as to make the performance of the services in fact gratuitous under the circumstances involved. Although an officer, as such, may receive no identifiable compensation in cash or in something other than cash for the performance of services, consideration for the services may be present because of some other compensated relationship with the corporation, or other circumstance, which negatives a conclusion that the services are performed gratuitously.

"14. As the status of honorary corporate officers now may be determined solely on the basis of this mimeograph, without reference to the additional tests specified in Mimeograph 4880, dated February 4, 1939 [C. B. 1039–1 (Part 1), 312], the latter mimeograph is hereby modified to exclude honorary corporate officers from its provisions. * * * This position was based on the provisions of section 1101 (a) (6) of the Social Security Act and section 1607(i) of the Federal Unemployment Tax Act and has been supported by the decision of

the Circuit Court of Appeals for the Tenth Circuit in the case of Nicholas v. Richlow Manufacturing Co., 126 F.2d 16. The foregoing provisions of the respective Acts state that 'The term "employee" includes an officer of a corporation,' and the court considered this language a sufficient basis for holding the officer involved in the case before it to have been an employee for purposes of the Social Security Act, without applying the usual tests of the employer-employee relationship. Several court decisions involving the Bureau's position on this subject subsequently have been handed down and have resulted in reconsideration of that position."

The question of whether an officer of a corporation is an employee of the corporation within the purview of the Federal Unemployment Tax Act and the Federal Insurance Contributions Act has been before the courts in a number of cases. Some of those cases will next be considered.

In United States v. Bernstein, supra, the trustees of a dissolved corporation sought to recover Social Security taxes, including taxes paid under the Federal Unemployment Tax Act. The issue was whether certain corporate officers were employees for the purposes of this Act. The only duties these officers performed was the attendance of stockholders' meetings, the signing of a few stock certificates, and the nominal attention to matters pertaining to the corporate organization. These officers received no compensation. The Court initially determined that these officers were not "per se" employees. In holding that the officers were not employees in fact, the Court stated, 179 F.2d at page 109:

"The business of the corporation, the operation of the apartment house, was competently managed by a fulltime manager and the officers were required to give little, if any, attention to its affairs in the years in question; and all of them were

fully and actively occupied in other gainful occupations. What little services they performed were of a minor or nominal nature having no material bearing or effect upon the functioning of the corporation in the conduct of its business. * * *

"On these facts it is clear enough that no one of the officers was an employee of the corporation in the ordinary understanding of that word or when tested by the common-law incidents of the relationship of employer and employee. * * * Such minor services as the officers performed were only those performed by virtue of their offices pursuant to the maintenance of the corporate organization as distinct from conduct of business by the corporation. In Shriver v. Carlin & Fulton Co., 155 Md. 51, 58, 141 A. 434, 438, 58 A.L.R. 767, the applicable law is succinctly expressed: 'It is true that a director nor any other officer of a corporation is by virtue of his office its employee, but there seems to be no valid reason why his occupancy of such office should disqualify him from serving the corporation in some other and different capacity, or from becoming its employee, where the duties and incidents of his employment are separate and distinct from those pertaining to his office.' "

In Independent Petroleum Corporation v. Fly, supra [141 F.2d 190], the plaintiff corporation was owned by its president, with the exception of one share of stock which was owned by the president's wife. She was elected secretary of the plaintiff corporation. The plaintiff sought to recover taxes paid under Title VIII and Title IX of the Social Security Act. The facts as stipulated included the following: " "* * * E. H. Simpson as president and general manager and sole owner performed all the duties both of president and secretary, except that in 1938 Mrs. Simpson signed two tax returns and the minutes of an annual stockholders meeting, all prepared by him and presented to her at their home for her signature. She never performed any duty provided by the by-laws for the Secretary of the Corporation except signing her name to these three instruments as aforesaid.' " She received no compensation. The Court initially determined that the president's wife was not an employee "per se" of the corporation. The Court noted that the Act did not levy the tax on "employees" but rather levied the tax on the employer for "having individuals in his employ." The Court concluded that under any common or usual understanding of these words it could not be said that the president's wife was in the employ of the plaintiff.

In National Wooden Box Ass'n v. United States, supra, the plaintiff corporation sought recovery of taxes paid under Title 9 of the Internal Revenue Code. The issue was whether the president, three vice-presidents, and treasurer were employees of the plaintiff. None of these officers received any remuneration. The three vice-presidents performed no duties. The president presided over annual meetings and wrote occasional letters. The treasurer's sole duty consisted of countersigning checks written by the plaintiff. These officers were provided with no office space by the plaintiff, and the duties of administration were performed by a manager. "In some instances, where the president made a trip to preside over a meeting, exclusively for that purpose, he was reimbursed his actual traveling expenses by the Association, and no more." 59 F.Supp. at page 120. The Court of Claims concluded that only persons who were hired and paid wages would constitute an individual in the employ of the plaintiff. The Court held that these officers were not employees and that the plaintiff was not liable for the tax.

In Tidwell v. United States, supra, the question presented was whether the president of the plaintiff corporation was an "employee" within the meaning of Title IX of the Social Security Act. The president performed only the duty of

signing the company's minutes which were prepared by a third person. He had no office, his presence at the company was not required, and he received no compensation. The Court held that the president was not in fact an employee. In so holding the Court said, 63 F.Supp. at page 611:

"Hearn W. Tidwell was not an individual in the taxpayer's employ in the usual and ordinary meaning of the words. He merely signed the corporate minutes for which he received no compensation. Even though considered an employe, it could not be said taxpayer's President was employed 'on each of some twenty days during the taxable year', as required by the Act. Under the facts here, it would do violence to the Act to say an officer is an 'employee' because he was 'standing by' each day of the year and rendered service by so doing."

In Lewiston Elevator Co. v. Reynolds, supra [63 F.Supp. 976], the plaintiff sought to recover taxes paid under Title IX of the Social Security Act. Plaintiff contended that its uncompensated officers were not employees under the Act. These officers' only duties were to sign documents in behalf of the plaintiff. The Court held that these officers were not employees, stating "* * * 'employee' for tax purposes meant one in the service of an employer, who works for salary or wages."

In United States v. Griswold, supra, the plaintiffs were trustees of a Massachusetts business trust. The plaintiffs sought to recover taxes paid by the trust under Section 901 et seq. of the Social Security Act of 1935 with respect to compensation received by the plaintiffs for their services as trustees. The district judge made the following findings 124 F.2d at page 600:

"These trustees hold formal meetings once each week and special meetings whenever necessary. They also meet informally from day to day, and while they do not have regularly established office hours, the greater portion of their time during business hours is spent at the office of the trust."

The plaintiffs received very substantial compensation for their services. The Court, in holding that these trustees were not "employees," said, 124 F.2d at page 601:

"The relationship of employer and employee in the ordinary sense does not exist here. These trustees render services and receive compensation, but we do not feel that they are subject to such supervision and control as to make them employees within the scope of the congressional intent."

In Deecy Products Co. v. Welch, supra, the plaintiff corporation sought to recover taxes assessed and collected by the defendant under Title IX of the Social Security Act of 1935. The liability for these taxes depended upon whether the statutory clerk of the plaintiff was an "employee." The clerk prepared the records of meetings and signed them. During the year in question the clerk's duties consisted of attending the stockholders' meeting and dictating the minutes. Of importance was the fact that the same individual who served as clerk was also the attorney for the plaintiff. The clerk received no compensation. From these facts, the Court concluded that the individual serving as the plaintiff's statutory clerk was an "employee." In so holding the Court said, 124 F.2d at page 598:

"The clerk performed services for the corporation. That they required only thirty-five minutes of his time in the year 1936 does not make it any less a rendering of services. * * * Nor can it be said that his serving as clerk was a gratuitous undertaking. * * * these services were incidental to his work as attorney for the corporation, in which capacity he was paid. * * * The only thing that can be done is to examine the facts

**262.**

of each case and then determine whether there is present sufficient control and supervision to make one an employee. Here the clerk is subject to the board of directors, and the board can direct him in the performance of the duties of his office. Moreover, 'The clerk * * * shall perform such other duties as the directors shall from time to time prescribe'. The directors can tell the clerk in what books to keep the minutes and where to keep the record books. It cannot be said that he has no superiors in the corporation who can give him orders."

Section 403.204(g), 26 Code of Federal Regulations, relating to the Federal Unemployment Tax Act, now reads as follows:

"§ 403.204 *Who are employees.* * * *

"(g) All classes or grades of employees are included within the relationship of employer and employee. Thus, superintendents, managers, and other superior employees are employees. Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is not considered to be an employee of the corporation. A director of a corporation in his capacity as such is not an employee of the corporation."

Section 403.204(d), 26 Code of Federal Regulations, reads as follows:

"(d) Whether the relationship of employer and employee exists will in doubtful cases be determined upon an examination of the particular facts of each case."

Section 403.204(e), 26 Code of Federal Regulations, reads, in part, as follows:

"(e) If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial."

Section 403.204(f), 26 Code of Federal Regulations, reads as follows:

"(f) The measurement, method, or designation of compensation is also immaterial, if the relationship of employer and employee in fact exists."

While the Regulations just referred to relate to the Federal Unemployment Tax Act, yet there are similar Regulations relating to the Federal Insurance Contributions Act. See Section 404.1004, 20 Code of Federal Regulations.

As heretofore noted, the definition of an employee in both of the Acts here under consideration contains a statement to the effect that the term "employee" includes an officer of a corporation. It now seems clear that under those definitions a person who becomes an officer of a corporation does not thereby ipso facto become an employee of the corporation within the purview of those Acts. It also seems clear that under those definitions an officer may also be an employee within the purview of those Acts and whether he does or does not have such status usually depends upon the facts and circumstances in a particular case.

Payments made by a corporation to an officer may be donative or honorary in character rather than compensatory in character. Where an officer is a substantial stockholder in a corporation, payments made to him may be in the nature of a return on invested capital, usually under the guise of salary or bonuses, rather than by way of the payment of dividends. Where an officer is a heavy financial backer of a corporation, the receipt of a salary for the performance of only nominal duties is sometimes regarded as a prerequisite of that investor relationship. The plaintiff does not claim that the payments in question were donative or honorary in character.

The plaintiff does not claim that Mr. Levens received those payments by way of return on his stock ownership. The plaintiff does not claim that Mr. Levens received the payments as a prerequisite of his being a heavy financial backer of the corporation. It is the claim of the plaintiff that the payments in question were compensatory in character. The plaintiff claims that the payments in question were made to compensate Mr. Levens for his expenses in coming to Fort Dodge. In the alternative the plaintiff claims that the payments were made to Mr. Levens for his services as a director of the corporation. The alternative claim will be first considered.

Section 403.204(g), 26 Code of Federal Regulations, heretofore set out, provides, in part:

"A director of a corporation in his capacity as such is not an employee of the corporation."

The plaintiff also cites S.S.T. 187 which is as follows:

XVI–36–8908
S.S.T. 187

"Section 811: Definitions
Regulations 91, Article 14: Wages
(Also Section 907; Regulations 90, Article 207.)

"Where an individual receives remuneration for services performed both as an officer and as a director of the M Corporation, the remuneration attributable to services performed as a director should be excluded in the computation of 'wages' under Titles VIII and IX of the Social Security Act.

"Advice is requested as to the method of computing 'wages' under Titles VIII and IX of the Social Security Act of an individual who is remunerated for services performed as an officer of the M Corporation and also as a director thereof.

"The term 'wages' is defined under Titles VIII and IX of the Social Security Act to mean 'all remuneration for employment,' subject to a limitation under Title VIII and to certain exceptions under Titles VIII and IX not here applicable. Section 1101(a) 6 of the Act provides that the term 'employee' includes an officer of a corporation. Article 3 of Regulations 91, applicable to Title VIII of the Act, and article 205 of Regulations 90, applicable to Title IX, provide that an individual is in the employ of another if he performs services in an 'employment' as defined in sections 811(b) and 907(c) of the Act, respectively. However, the relationship between the person for whom such services are performed and the individual who performs such services must, as to those services, be the legal relationship of employer and employee. A director of a corporation as such is not an employee. A director may be an employee, however, if he performs services for the corporation other than those required by attendance at, and participation in, meetings of the board of directors.

"The individual here in question is a director of the M Corporation and for his services in that capacity he receives x dollars for each meeting of the board of directors which he attends. The individual is also an officer of the corporation and receives 100x dollars per month for services performed in that capacity.

"Inasmuch as the legal relationship of employer and employee does not exist between the individual in question and the M Corporation with respect to those services required by attendance at, and participation in, meetings of the board of directors, it is held that the remuneration which he receives for such services as director should be excluded from his total remuneration in computing 'wages' for the purpose of Titles VIII and IX of the Social Security Act."

The alternative claim of the plaintiff lacks support in the record. There was no testimony or other proof that during the period of time in question any meeting of the board of directors of the plaintiff was ever held or that Mr. Levens ever attended any meeting of that board. Mr. Levens appeared as a witness. In his testimony he made no reference to his having rendered any service as a director of the corporation.

■ The relationship of employer and employee is contractual in character. In certain instances the law will impose an employer-employee status on a certain relationship. However, the relationship which gives rise to such imposition is consensual in character. The determination of what relationship two parties entered into frequently depends upon the intent of such parties. While the making of payments by a corporation to an officer which are compensatory in nature are not determinative of an employer-employee relationship, and while such relationship may exist absent any such payments, yet the making of such payments and the conditions and circumstances under which they were made may constitute an objective manifestation of the intent of the parties as to their relationship. In the recent case of Rotterman v. General Mills, Inc., Iowa 1953, 61 N.W.2d 718, at pages 722–723, the Iowa Supreme Court stated:

"The court must take an objective view in determining the parties' intent. It is not necessarily the actual intent we seek, but the intent manifested objectively. Union Republican Co. v. Anderson, 211 Iowa 1, 5, 232 N.W. 492; Comptograph Co. v. Burroughs Adding Mach. Co., 179 Iowa 83, 159 N.W. 465; Seeger v. Manifold, 210 Iowa 683, 231 N.W. 479. We seek the intent a reasonably intelligent person would derive from the expressions used, under the circumstances and knowledge of the parties at the time of the transaction. Iowa Annotations to Re-

statement of Contracts, § 227, page 352; Williston on Contracts, Rev. Ed., Vol. 1, § 35; 12 Am.Jur. § 227, page 748."

In determining the intent of parties as to their relationship, their relevant contemporaneous attitude and actions at a time when no litigation related to that relationship was envisaged constitute significant objective manifestations thereof.

In the present case prior to the time this litigation was envisaged there were several significant objective manifestations of intent on the part of Mr. Levens and the corporation indicating that an employer-employee relationship existed between it and him and that the payments in question were paid to him by virtue of that relationship. However, there were some facts and circumstances established tending to negative the existence of such relationship. In addition, Mr. Bodensteiner and Mr. Levens gave testimony somewhat subjective in character to the effect that they did not intend an employer-employee relationship between the corporation and Mr. Levens.

The picture presented by the record in this case is lacking in clarity. The record discloses a somewhat confused and uncertain situation. Where such is the case the question of the burden of proof becomes of importance. There is connected with that question the nature of this action.

In the case of Howard v. United States, 5 Cir., 1942, 125 F.2d 986, the plaintiff combined in one action a claim against the United States and a claim against the Collector. The Court stated, 125 F.2d at page 992:

"This action, whether against the Collector or the United States, is in the nature of an action for money had and received. There is no difference in essential characteristics between the action against the Collector and that against the United

States. \* \* \* In each instance the action is predicated upon the theory that the defendant has received money of the plaintiff, which in equity and good conscience should be refunded."

The taxpayer, not the Government, has the burden of proof. Scofield v. First Nat. Bank in Houston, 5 Cir., 1946, 158 F.2d 268, certiorari denied 331 U.S. 806, 67 S.Ct. 1188, 91 L.Ed. 1827. The taxpayer has the burden of proving the fact or facts which establish the illegality of the taxes he has paid and seeks to recover. Smith v. Henslee, 6 Cir., 1949, 173 F.2d 284. The taxpayer's right to a refund must be established by a preponderance of the evidence. Suisman & Blumenthal, Inc., v. Eaton, D.C.1934, 8 F.Supp. 217; Bechelli v. Hofferbert, D.C.1953, 111 F. Supp. 631.

In the present case in order to establish that the taxes for which a refund is sought were illegally or erroneously collected from the plaintiff, the burden was upon the plaintiff to so establish by a preponderance of the evidence that an employer-employee relationship did not exist between it and Mr. Levens during the period here involved.

It is the view and the holding of the Court that the plaintiff has failed to sustain its burden of proof in this action.

It Is Ordered that judgment be entered in favor of the defendant.

It Is Further Ordered that under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the findings of fact, conclusions of law and order for judgment in the foregoing opinion shall constitute the findings of fact, conclusions of law, and order for judgment in this case.